1999-NMCA-071

983 P.2d 1006

**Mercedes FERNANDEZ–WELLS, Plaintiff–Appellant,**

v.

**J. Robert BEAUVAIS, Defendant– Appellee.**

**No. 19,455.**

Court of Appeals of New Mexico.

April 28, 1999.

**488**

Jeffrey A. Dahl, Lamb, Metzgar, Lines & Dahl, P.A., Albuquerque, for Plaintiff–Appellant.

J. Robert Beauvais, J. Robert Beauvais, P.A., Ruidoso, for Defendant–Appellee.

## OPINION

PICKARD, Chief Judge.

{1} Plaintiff appeals the trial court's entry of summary judgment against her on her claim of invasion of privacy by giving publicity to private facts and by invasion of solitude. She also appeals the trial court's denial of her motion to amend the complaint to include a count of breach of confidence or prima facie tort. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Plaintiff and Defendant are practicing attorneys in New Mexico. From 1988 through January 1996, Plaintiff was a staff attorney with the New Mexico Public Utilities Commission (PUC). During her tenure with the PUC, Plaintiff was involved in litigation relating to Capitan–Carrizozo Natural Gas Company (CCNG) and Zia Natural Gas Company (Zia). Upon leaving her position with the PUC, Plaintiff became the Manager of Regulatory Affairs for Zia. Defendant was counsel for CCNG in its litigation before the PUC and at all times material to this case.

{3} After Plaintiff began work for Zia, Defendant, on CCNG's behalf, filed a complaint with the PUC alleging that Plaintiff's degree of involvement in litigation between Zia and CCNG created a conflict of interest. In October 1996, Defendant lodged a complaint against Plaintiff with the Secretary of State, alleging that Plaintiff had violated the Governmental Conduct Act NMSA 1978, § 10–16–1 (1993). Defendant forwarded a copy of this letter of complaint to the New Mexico State Bar Disciplinary Board. As a result of Defendant's complaint, Plaintiff received an informal admonition from the Disciplinary Board, and Defendant, as complainant, was informed of this outcome pursuant to Rule 17–304(E) NMRA1999.

{4} On January 15, 1997, Defendant informed the Secretary of State by letter that the Disciplinary Board had made "an affirmative finding of the violation of the Canons of Ethics" against Plaintiff. An employee of the Secretary of State who was acquainted with Plaintiff informed Plaintiff of the office's receipt of Defendant's letter. As a result, Plaintiff filed a complaint for invasion of privacy, alleging that the informal admonition against Plaintiff was confidential and that Defendant's divulgence of it constituted giving publicity to private facts and invasion of solitude. Plaintiff later moved to amend her complaint to include counts of breach of confidence and prima facie tort.

{5} At the conclusion of a scholarly opinion that was most helpful to this Court, the trial court entered an order of summary

judgment against Plaintiff on her invasion of privacy claim, and it denied her motion to amend her complaint. Plaintiff appeals both of these decisions.

## II. DISCUSSION

### A. *Grant of Summary Judgment on Plaintiff's Privacy Claim*

#### 1. *Standard of Review*

{6} In reviewing an appeal from a grant of summary judgment, this Court must determine whether a material fact is in dispute. *See Silva v. Town of Springer,* 1996–NMCA–022, ¶ 5, 121 N.M. 428, 912 P.2d 304. We view the evidence in the light most favorable to requiring a trial on the merits of the case and most favorable to the party opposing summary judgment. *See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor,* 115 N.M. 159, 163, 848 P.2d 1086, 1090 (Ct.App.1993). If no disputed material fact exists, the moving party is entitled to judgment as a matter of law. *See* Rule 1–056 NMRA1999.

#### 2. *Public Disclosure of Private Facts*

{7} New Mexico recognizes the tort of invasion of privacy. *See Moore v. Sun Publ'g Corp.,* 118 N.M. 375, 383, 881 P.2d 735, 743 (Ct.App.1994). One recognized type of invasion of privacy is the publication of private facts. *See id.* Although we used the words "publication of private facts" in *Moore, see id.,* in this opinion, to avoid confusion with the word of art, "publication," as that is understood in the context of defamation actions, we shall use the words "giving publicity to private facts," *see* Restatement (Second) of Torts § 652D (1977) and cmt. a, or "public disclosure of private facts," *see* W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 117, at 856–57 (5th ed.1984) [hereinafter *Prosser and Keeton* ]. A majority of jurisdictions have, in fact, recognized this branch of invasion of privacy. *See* Diane L. Zimmerman, *Requiem for a Heavyweight: A Farewell to Warren and Brandeis's Privacy Tort,* 68 Cornell L.Rev 291, 365 (1983). Although New Mexico courts have recognized the cause of action, they have not previously addressed a case

involving the tort of public disclosure of private facts.

{8} As articulated by Dean Prosser, the elements of this tort are public disclosure of private facts, disclosure which would be objectionable to a reasonable person, and a lack of legitimate public interest in the information. *See Prosser and Keeton, supra,* § 117, at 856–57; Restatement (Second) of Torts § 652D. The trial court in this case decided to enter summary judgment as a result of the lack of the first element, public disclosure, without adopting any particular set of elements. We agree with the trial court's approach, as publicity is an element of public disclosure of private facts not only in the Restatement view but in all of the jurisdictions that have outlined a prima facie case for this tort. *See, e.g., Robert C. Ozer, P.C. v. Borquez,* 940 P.2d 371, 377 (Colo.1997) (en banc); *Miller v. Motorola, Inc.,* 202 Ill. App.3d 976, 148 Ill.Dec. 303, 560 N.E.2d 900, 902–03 (1990); *Lake v. Wal–Mart Stores, Inc.,* 582 N.W.2d 231, 235 (Minn.1998); *St. Anthony's Med. Ctr. v. H.S.H.,* 974 S.W.2d 606, 609–10 (Mo.Ct.App.1998); *Swerdlick v. Koch,* 721 A.2d 849, 858–59 (R.I.1998); *McCormick v. England,* 328 S.C. 627, 494 S.E.2d 431, 437–38 (Ct.App.1997); *Hillman v. Columbia County,* 164 Wis.2d 376, 474 N.W.2d 913, 919–20 (Ct.App.1991).

{9} The Restatement (Second) of Torts § 652D comment a, states:

"Publicity" ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge....

Thus, it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

However, the extent of the required publicity to support a claim of public disclosure of private facts varies from jurisdiction to jurisdiction. *Compare, e.g., St. Anthony's Med. Ctr.,* 974 S.W.2d at 610–11 (holding that publicity means communication to the public in general or a large number of people), *with*

*Pontbriand v. Sundlun,* 699 A.2d 856, 864 (R.I.1997) (determining that the requirement of publicity had been altered by statute to require only repetition to a third party). Some jurisdictions have adopted an exception to the widespread publicity requirement. That is, where the plaintiff and the "public" receiving the private information enjoy a special relationship, disclosure may be actionable despite the lack of widespread publicity. *See Miller,* 148 Ill.Dec. 303, 560 N.E.2d at 903.

▮ {10} Even the most inclusive common-law definitions of "publicity," however, were not met in this case. Disclosure by letter to the Secretary of State's office does not constitute widespread publicity. Plaintiff makes no allegation that Defendant could have expected public disclosure to arise from Defendant's mailing a letter to the Secretary of State, as would be the case, for example, if the document became a public record available to the press and others. Any expected disclosure would, at most, be to those with a reason to know within the offices of the Secretary of State and the Attorney General. Nor did Plaintiff share a special relationship with the Secretary of State's office, despite the fact that she happened to have an acquaintance working there. The purpose of the special-relationship exception, it seems, is to address circumstances in which the limited "public" to which the disclosure is made is the portion of the public whose opinion matters most to the injured party—"'such as fellow employees, club members, church members, family, or neighbors.'" *See id.,* (quoting *Beaumont v. Brown,* 401 Mich. 80, 257 N.W.2d 522, 531 (1977)).

{11} We indicated in *Andrews v. Stallings,* 119 N.M. 478, 493, 892 P.2d 611, 626 (Ct.App.1995), that a report of suspected wrongdoing to appropriate authorities does not meet the requirement for publicity under a "false light" invasion of privacy theory. In *Andrews,* the defendant allegedly published information to the IRS as a result of suspicions that the plaintiffs were violating tax laws. The plaintiffs in that case also claimed that the defendant reported to several entities their suspicion that the plaintiffs were carrying inadequate insurance for a public event. *See id.* at 491–92, 892 P.2d at 624–25.

Neither of these activities was sufficient to sustain a cause of action for invasion of privacy. It appears that the publicity requirement in false-light cases such as *Andrews* is coextensive with that in disclosure-of-private-facts cases. *Compare* Restatement (Second) of Torts § 652D ("Publicity Given to Private Life[—]One who gives publicity to a matter...."), *with* Restatement (Second) of Torts § 652E ("Publicity Placing Person in False Light[—]One who gives publicity to a matter....").

▮ {12} Additionally, summary judgment may also be proper as a result of the purpose of Defendant's disclosure. We noted above that the final element of the tort is a lack of legitimate public interest in the information. In discussing the tort of outrage in the *Andrews* case, we noted there that the law encourages citizens to report any suspected violation of the tax laws, and that a lawful attempt to assist law enforcement agents should be encouraged rather than penalized, regardless of the motive behind the report. *See Andrews,* 119 N.M. at 491, 892 P.2d at 624. The public policy concerns at work in *Andrews* are similarly applicable here. Defendant here was merely relaying information to authorities as a step in the process by which the attorney general's office would ultimately decide whether to file charges against Plaintiff. Therefore, his revelation to the Secretary of State of the outcome of disciplinary proceedings against Plaintiff is not actionable as public disclosure of private facts.

### 3. *Intrusion on Solitude*

▮ {13} In an effort to retain her privacy cause of action and in apparent recognition of the difficulties she has demonstrating the public-disclosure element of the public-disclosure-of-private-facts branch of the tort, Plaintiff alternatively contends that Defendant committed the invasion-of-solitude branch of the tort, which does not require publicity. However, in *Moore* we described this branch of the tort as invading someone's private space or solitude, and gave as examples eavesdropping on a private conversation or peeping in a bedroom window. *See Moore,* 118 N.M. at 383, 881 P.2d at 743.

{14}  Intrusion into solitude appears to be based on the manner in which a defendant obtains information, and not what a defendant later does with the information, which is covered by the public-disclosure-of-private-facts branch. *See Miller,* 148 Ill.Dec. 303, 560 N.E.2d at 903–04. Here, there is no contention that Defendant learned of the outcome of the disciplinary matter by intrusion. The contention concerns what he did with the information.

### B.  *Denial of Plaintiff's Motion to Amend*

#### 1.  *Standard of Review*

{15}  We review the denial of a motion to amend a complaint for abuse of discretion. *See Wirtz v. State Educ. Retirement Bd.,* 1996–NMCA–085, ¶ 8, 122 N.M. 292, 923 P.2d 1177. Amendments to pleadings should be allowed in the interest of justice, but a denial of a motion to amend should only be reversed if no proper reason supports the district court's decision. *See id.*

#### 2.  *Breach of Confidence*

{16}  The trial court denied Plaintiff's motion to add a count of breach of confidence, ruling that Plaintiff would be unable to recover under this theory. As the trial court noted, New Mexico recognizes the tort of breach of confidence. Central to this tort is a relationship of trust and confidence between the parties. *See Eckhardt v. Charter Hosp. of Albuquerque, Inc.,* 1998–NMCA–017, ¶ 16, 124 N.M. 549, 953 P.2d 722. Therefore, the viability of Plaintiff's claim is governed by the question of what relationships give rise to a duty not to disclose.

{17}  The trial court ruled that Defendant owed no duty of confidence to Plaintiff. The trial court relied on language in *Phelan v. Phelan,* 35 N.M. 36, 44, 289 P. 996, 999 (1930) (This "is not a case of breach of confidence; because in the particular matter, none appears to have been invited or reposed."). The court also cited with approval the discussion of this issue found in Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort,* 82 Colum.L.Rev. 1426 (1982). The Note suggests that a preexisting confidential

relationship between the parties is required. *See id.* at 1460. This Court similarly framed the cause of action in terms of confidential relationships such as that between psychiatrist and patient. *See Eckhardt,* 1998–NMCA–017, ¶¶ 18, 20, 124 N.M. 549, 953 P.2d 722. It is apparent that Defendant did not owe Plaintiff the requisite duty. He did not, in the course of a relationship that customarily incorporates a duty of confidence, learn confidential information about Plaintiff and then breach that confidence. Defendant learned the arguably confidential information as a result of the disciplinary rules' requirement that complainants be notified of the outcome of their complaints, rather than as a result of an existing confidential relationship. *See* Rule 17–304(E) ("Complainants ... shall be immediately advised of the final disposition of their complaints.").

{18}  Plaintiff contends that Rule 17–304 creates a duty owed by the complainant, in this case an attorney, to the subject of the complaint, in this case another attorney. Under Rule 17–304(A), investigations and hearings conducted by or under the direction of disciplinary counsel "shall be" confidential unless they fall under an exception stated in 17–304(B), but the Rule does not state who must keep them confidential.

{19}  Regardless of what duty the disciplinary rule may or may not create in attorneys as complainants, Defendant's action was not a breach of confidence. There was no confidential relationship between the parties. Not only did Plaintiff not confide in Defendant, but the two shared an adversarial relationship. Any duty of confidentiality created by the rules as between attorney-complainants acting for a client and attorney-respondents is not of the sort protected by the tort of breach of confidence.

{20}  The trial court did not err in finding that the lack of confidential relationship between the parties would have prevented Plaintiff from recovering for breach of confidence. Therefore, the denial of Plaintiff's motion to amend was proper.

#### 3.  *Prima Facie Tort*

{21}  The trial court also denied Plaintiff's attempt to amend her complaint to

include a count of prima facie tort. Prima facie tort has been recognized as a cause of action for intentional torts that do not fit within the contours of commonly accepted torts. *See Schmitz v. Smentowski*, 109 N.M. 386, 396, 785 P.2d 726, 736 (1990). To recover for this tort, Plaintiff must establish that Defendant committed an intentional act with injurious intent and injurious result, and that the act was done without sufficient justification. *See id.* at 394, 785 P.2d at 734.

{22} The trial court rejected this claim as a basis to amend Plaintiff's complaint, finding that the claim was being asserted to circumvent established law. *See Andrews*, 119 N.M. at 494, 892 P.2d at 627. *Andrews* offers a situation analogous to that of the instant case. There, the plaintiffs alleged that the defendants should be liable for prima facie tort for turning the plaintiffs' tax information over to the IRS, which led to an audit. We held that this was an attempt to overcome the defects in plaintiffs' case for defamation and invasion of privacy. We noted that the purpose of prima facie tort was to provide a remedy for intentional acts that " 'do not fit within the contours of accepted torts,' " *id.* at 493, 892 P.2d at 626, (quoting *Schmitz*, 109 N.M. at 396, 785 P.2d at 736), rather than to " 'evade stringent requirements of other established doctrines of law.' " *Andrews*, 119 N.M. at 493, 892 P.2d at 626, (quoting *Schmitz*, 109 N.M. at 398, 785 P.2d at 738).

{23} The essence of the trial court's opinion was that prima facie tort is not appropriate every time a plaintiff's traditional tort claim falls short. Plaintiff's claim was clearly for public disclosure of private facts. Her motion to add a count of prima facie tort appears to be an attempt to compensate for her inability to prove her privacy claim. Plaintiff sought to amend her claim in an attempt to cure the defect in her privacy case. Her prima facie tort allegations seek to address the same underlying action by Defendant and the same policy considerations as her failed privacy claim. Therefore, the trial court did not err in denying her motion to amend.

## III. CONCLUSION

{24} Based on the foregoing discussion, we affirm.

{25} **IT IS SO ORDERED.**

HARTZ and WECHSLER, JJ., concur.