2003-NMCA-025

65 P.3d 254

Barbara BOVEE, Plaintiff–Appellant,

v.

STATE of New Mexico HIGHWAY AND TRANSPORTATION DEPARTMENT, Peter K. Rahn, Richard Ferrary and John Does One Through Five, Individually, Defendants–Appellees.

No. 22,102.

Court of Appeals of New Mexico.

Nov. 14, 2002.

Certiorari Denied, No. 27,858, Jan. 22, 2003.

E. Justin Pennington, Law Offices of E. Justin Pennington, Albuquerque, NM, for Appellant.

Michael Dickman, Santa Fe, NM, for Appellees.

## OPINION

WECHSLER, Judge.

{1} Plaintiff Barbara Bovee appeals the district court's judgment in favor of the defendants in this Title VII action. Plaintiff sued the New Mexico State Highway and Transportation Department (the Department) and the other defendants after she was unsuccessful in gaining employment. Her complaint alleged unlawful retaliation for an earlier action she had brought against the Department, breach of employment contract, and civil rights violations. The district court entered judgment for Defendants, having found that the Department had legitimate, non-discriminatory reasons not to hire Plaintiff for each of the positions she sought.

{2} Plaintiff raises five issues on appeal: whether the district court erred (1) when it found that the Department's reliance on Plaintiff's testimony in an earlier Title VII case constituted a legitimate, non-discriminatory reason for refusing to consider Plaintiff's applications with the Department; (2) when it denied Plaintiff's motion to amend her complaint; (3) when it determined that the Department had a legitimate, non-discriminatory reason for not hiring Plaintiff as an Engineer III in Santa Fe; (4) when it determined that the Department articulated legitimate, non-pretextual, non-discriminatory reasons for failing to hire Plaintiff for four positions: as an Engineer I in Santa Fe and as an Engineer Associate in Roswell, Clovis, and Santa Fe; and (5) whether the district court erred by dismissing Plaintiff's breach of contract and civil rights claims. We affirm.

*Facts and Background*

{3} From 1981 through 1993, the Department employed Plaintiff, beginning as an Engineer in Training and ending as a Highway Engineer II. In 1990, Plaintiff sued the Department in federal court, claiming sex discrimination, retaliation, and violation of her constitutional rights. After filing her complaint but before trial, Plaintiff resigned her employment on the ground that she was suffering increased harassment and retaliation. During the trial to a jury in January 1993, Plaintiff testified that the Department's conduct had damaged her to such an extent that she was unable to work in engineering or in any field related to engineering for the rest of her life. Plaintiff had two expert psychologists; one testified that Plaintiff could never work again in engineering, and the other testified that with two to three years of weekly therapy, Plaintiff would "have a 'moderate' chance" of being able to return to work.

{4} The jury returned a verdict for Plaintiff of $1.8 million. However, the federal dis-

trict court ordered a new trial, citing the inherent unreliability of the psychological injury claimed by Plaintiff. In September 1993, before the second trial, the case settled for $725,000, which included compensation for future economic injuries and employment problems.

{5} In August 1994, eleven months after settling the federal case, Plaintiff applied to the Department for three positions. She first applied for a position as Engineer III in the Design and Construction Process Control Bureau in Santa Fe. The Department did not interview Plaintiff. It stated that it did not select Plaintiff for the position because the person hired had superior qualifications and expertise. Plaintiff also applied for a position as an Engineer I in the Technical Support Section of the district office in Grants. The district court found that Plaintiff was not selected for that position because one interviewer believed the person hired had more understanding of local government needs and more design experience and a second interviewer believed the person hired would have a better attitude and more patience with local governments.

{6} Plaintiff next applied for an entry-level position as an Engineer Associate in the Roswell district. Although Plaintiff was the only eligible applicant for this position, which paid approximately half the amount Plaintiff had made when she left the Department, the supervisor for that position decided not to interview Plaintiff because he was afraid hiring her would cause problems with his crew based on the crew's "grudge" against college-educated professionals. The Department did not fill that position and the unfilled position was transferred to the Clovis office. Plaintiff also applied for the position in Clovis and was interviewed along with three other applicants. Plaintiff was deemed overqualified and none of the applicants was selected for the position, which the Department eventually filled by transferring an employee from another position.

{7} In April or May 1995, Plaintiff applied for another position as an Engineer Associate, this time in the Bridge Design Section in Santa Fe. The Department interviewed Plaintiff but offered the job to another applicant with structural design engineering experience (which Plaintiff lacked), although, ultimately, it did not hire the other applicant because of his work status in the United States. On June 1, 1995, after her interview for this position, Plaintiff wrote to Department Secretary Pete Rahn, stating that there were irregularities in the hiring process and asking him to intervene personally. On June 22, 1995, Plaintiff also applied for a Highway Engineer III position. That application was dismissed along with Plaintiff's application for the most recent Engineer Associate position when Secretary Rahn replied to Plaintiff's letter on July 7, 1995.

{8} In his July 7, 1995 letter to Plaintiff, Rahn stated that he had reviewed her various applications and determined that she had been treated fairly. Rahn also stated that in reviewing her lawsuit, he discovered that she had made the following statements under oath: " 'I'm not able to go back into the field of engineering.' 'I can't be an engineer anymore.' 'I can't deal with specifications. I can't deal with looking at a drafting table.' 'Driving through a construction project now, I get sick.' 'I don't want anything to do with engineering at all.' " Rahn also noted that Plaintiff had represented that her experience with the Department had been so dreadful that she could not work in anything to do with engineering for the rest of her life. Rahn indicated that these statements were considered in the settlement of her lawsuit. Rahn concluded by saying, "[b]ased upon your sworn testimony, and the fact that you have already been compensated for your future inability to work for the Department, I believe it is in the best interests of both you and the Department if you seek employment elsewhere."

{9} Plaintiff then sought and obtained employment as City Engineer for the City of Gallup, New Mexico. She was so employed from September 1995 until 1998. In May 1996, Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC) and the New Mexico Human Rights Division, alleging that the Department had retaliated against her by not hiring her because of the earlier lawsuit. The EEOC determined that Plaintiff had not

waived her right to future employment with the Department, that she was as qualified for the positions she sought as the other applicants, and that she was not selected because she protested employment practices. The Department declined to settle the claim, and Plaintiff filed her complaint in this case on March 12, 1997.

{10} After a bench trial, the district court ruled that Plaintiff had made a prima facie case of retaliation and that she was not estopped from raising the claim but that her statements in the earlier lawsuit could form the basis of the Department's legitimate business decision not to hire her. The district court also ruled that the Department had legitimate non-discriminatory reasons for each of its decisions not to hire Plaintiff, that Plaintiff failed to meet her burden of proving that the Department's stated reasons were pretextual, and that she thus failed to prove that the Department had intentionally discriminated against her. The court also determined that because Plaintiff's employment with the Department ended in 1993, there was no legal basis for a claim of breach of contract.

*Intentional Discrimination—Burden of Persuasion and Standard of Review*

{11} Three of Plaintiff's issues address the ultimate question in this case of whether the Department intentionally discriminated against Plaintiff; that is, whether the Department retaliated against Plaintiff by either not hiring her or not considering her job applications because she had previously participated in a Title VII action against it. Plaintiff challenges the district court's findings that the Department did not intentionally discriminate against her, arguing that consideration of her prior testimony was discriminatory and that there was insufficient evidence to support findings that it had not discriminated against her.

{12} Under 42 U.S.C. § 2000e–3(a) (2000),

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*Burden of Persuasion*

■ {13} In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (McDonnell Douglas), the United States Supreme Court established a framework for the production of evidence in a Title VII case. Initially, the plaintiff must make a prima facie case of discrimination, which creates a presumption of discrimination. *Id.* at 802, 93 S.Ct. 1817. The defendant must then produce evidence of a non-discriminatory reason for the action, after which the plaintiff is given the opportunity to show that the reason given is a pretext for discriminatory action. *Id.* at 802–04, 93 S.Ct. 1817. This framework, however, as the Supreme Court pointed out in *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), was " 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' " (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).

■ {14} Indeed, as discussed in *Aikens,* 460 U.S. at 715, 103 S.Ct. 1478 and reaffirmed in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), once a plaintiff has made a prima facie case creating a presumption of discrimination, and a defendant has provided a legitimate, non-discriminatory reason in response, the presumption raised by the prima facie case is rebutted and "drops from the case." (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). At that point, a

genuine issue of fact has been created as to whether the defendant discriminated against the plaintiff, and the case proceeds to a trial. *Burdine*, 450 U.S. at 254–56, 101 S.Ct. 1089. Thus, the question before a district court in a bench trial on the merits is "the ultimate question of discrimination," not the question of whether a plaintiff has made a prima facie case. *Aikens*, 460 U.S. at 714, 103 S.Ct. 1478. Accordingly, although the parties discuss the application of the *McDonnell Douglas* test, because the case was tried on the merits, our focus is whether Plaintiff met her "ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

### Standard of Review

■ {15} The parties disagree on the appropriate standard of review in this case. Plaintiff urges us to review de novo the question of the district court's reliance on Plaintiff's testimony in a previous Title VII case as a mixed question of law and fact, to determine if the court correctly applied the law to the facts. In its answer brief, the Department argues that our review is of a factual finding, and that we should simply determine if, when viewed in a light most favorable to the finding, it is supported by substantial evidence. In her reply brief, Plaintiff argues that the dispute is not about historical facts but the legal question of whether the Department could consider the fact of Plaintiff's testimony in the earlier lawsuit when making its decision not to hire her.

{16} In *Aikens*, 460 U.S. at 715, 103 S.Ct. 1478 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089), the United States Supreme Court stated that "[t]he 'factual inquiry' in a Title VII case is '[whether] the defendant intentionally discriminated against the plaintiff.'" The Court emphasized that discriminatory intent is a factual question and that neither trial courts nor reviewing courts "should treat discrimination differently from other ultimate questions of fact." *Aikens*, 460 U.S. at 716, 103 S.Ct. 1478. Thus, even though the district court in this case was required to determine whether it was dis-

criminatory to rely on Plaintiff's statements made during the earlier proceedings, the court was still required to make a factual finding regarding discriminatory intent, and we will therefore review discriminatory intent as a factual question.

■ {17} The federal cases apply Federal Rule of Civil Procedure 52(a) to their review of this factual finding. Under that standard, when a case has been tried to the bench, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a). Under our law, we review the factual findings to determine whether they are supported by substantial evidence. *See Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996). When considering a substantial evidence claim, therefore, "we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177.

### Use of Prior Testimony

■ {18} The district court found that it was not discriminatory for the Department to take Plaintiff's testimony into account in making its decision not to consider Plaintiff for any engineering positions. This finding specifically relates to Plaintiff's final application in June 1995 for an Engineer III position and to her application for the Engineer Associate position in the Bridge Design section, which was pending at the time Rahn wrote his letter to Plaintiff. The district court based this finding on "the substance of Bovee's sworn testimony during her first lawsuit that she was unable to work in engineering or anything relating to engineering for the rest of her life, coupled with the State's payment to her in compensation for her inability to continue working in engineering."

{19} Plaintiff claims that because the Department's decision not to consider her application was based on its review of her testimony in a prior Title VII claim brought against

the Department, the decision constituted retaliation prohibited by 42 U.S.C. § 2000e–3(a). We must therefore determine whether the trial testimony constituted evidence that could be considered non-discriminatory, and whether, when viewed in a light most favorable to the finding, it was sufficient to support a finding that the Department did not intentionally discriminate against Plaintiff.

{20} The district court weighed two possible interpretations of the Department's consideration of Plaintiff's prior testimony. Plaintiff argued that the Department did not hire her because she had brought a Title VII proceeding against the Department—a clearly discriminatory reason. The Department argued that it did not hire Plaintiff because she and her experts testified in that proceeding that she was incapable of working as an engineer again, an injury for which she was compensated. Plaintiff contends that her testimony in the earlier trial cannot be used as a reason for not hiring her. *See Glover v. S.C. Law Enforcement Div.*, 170 F.3d 411, 414 (4th Cir.1999) (stating that "all testimony in a Title VII proceeding is protected against punitive employer action"); *Pettway v. Am. Cast Iron Pipe Co.*, 411 F.2d 998, 1007 (5th Cir.1969) (stating that an employee may not be fired for accusations made in an EEOC proceeding); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir.1997) (stating that anti-retaliation provision of Title VII extends to any testimony, not just testimony given willingly). Plaintiff also urges that the Department's conclusion that she could not function as an engineer was erroneous, based on her work with the City of Gallup.

{21} In weighing the two possible interpretations of the Department's action, the district court found that the Department did not have discriminatory intent. The Department argues that this finding was based on substantial evidence. It points out that Secretary Rahn testified repeatedly that Plaintiff was not considered for employment because she represented that she was unable to work and had been compensated for that inability.

{22} The district court drew a distinction between the fact that Plaintiff had filed an earlier lawsuit and the representations Plaintiff made during that lawsuit that she was incapable of working as an engineer. It found that the Department's reason for refusing Plaintiff was based upon her alleged incapacity to perform the job, not her accusation of discrimination or participation in the lawsuit.

{23} As the Supreme Court clarified in *Hicks*, 509 U.S. at 523–24, 113 S.Ct. 2742 "Title VII does not award damages against employers who cannot prove a non-discriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action" for a discriminatory reason. The district court's finding that the Department's decision not to hire Plaintiff was not intentionally discriminatory was based on evidence that the decision not to hire Plaintiff was based on the fact that Plaintiff claimed she was incapable of working and had been compensated for that inability, rather than on the fact that she had brought an action under Title VII or on trial testimony regarding discrimination. *See Jones v. Flagship Int'l*, 793 F.2d 714, 725 (5th Cir.1986) (noting that employer may terminate employee who files Title VII charge when employer's action is in part taken because of separate improper conduct of employee). Discrimination cannot be proven by merely demonstrating that an employer may have been wrong about a plaintiff's inability to perform the work. *See Kendall v. Watkins*, 998 F.2d 848, 851–52 (10th Cir.1993); *Gray v. Univ. of Ark.*, 883 F.2d 1394, 1401 (8th Cir.1989). Thus, there was sufficient evidence to support the district court's finding that the Department did not have a discriminatory intent when it refused to hire Plaintiff.

{24} Furthermore, the distinction between the two reasons for not hiring Plaintiff that the district court considered is also similar to a distinction articulated in *Kendall*. In that case, the plaintiff had previously filed a sex discrimination claim with the EEOC for discriminatory discharge against the Southwestern Power Administration (SWPA), and the charge had been settled. *Id.* at 849. Under the terms of the settlement, the plaintiff agreed to withdraw her complaint and not to institute suit. *Id.* SWPA agreed to award

back pay from the date of the initial discharge and to change the designation in her personnel file from termination to resignation. *Id.* SWPA also agreed to reinstate the plaintiff for a period of approximately seven months, and the plaintiff signed an irrevocable letter of resignation. *Id.* The plaintiff later attempted, unsuccessfully, to revoke her resignation. *Id.* A month after her resignation became effective, she applied for two positions with SWPA. *Id.* SWPA returned the applications with a letter stating that under the terms of the settlement agreement, it had no obligation to her, which it interpreted to mean that it did not have to consider her for future employment. *Id.*

{25} In reviewing the plaintiff's appeal from the district court's grant of summary judgment for the employer—a different procedural posture from that in this case—the Tenth Circuit reviewed the issue de novo and stated that "[i]f the SWPA refused to consider plaintiff for future employment because she [had] brought a Title VII claim that the agency had to settle, the agency would be in violation of Title VII." *Id.* at 851. The court then continued: "If, however, the agency relied not on the fact that it settled plaintiff's Title VII claim, but on the terms pursuant to which the claim was settled, it did not *necessarily* violate Title VII." *Id.* The agency would only have violated Title VII if it interpreted the terms of the settlement to effect a waiver of prospective Title VII claims. *See id.*

### Sufficiency of the Evidence

{26} Plaintiff also seeks review of the district court's findings and conclusions in which the court determined that the Department had legitimate, non-discriminatory reasons for not hiring her for each of the following positions: (1) Engineer III, in Santa Fe, for which Charles Hatch was hired; (2) Highway Engineer I, in Grants, for which Alvin Dominguez was hired; (3) Engineer Associate, in Roswell, which was not filled and the position transferred to Clovis; (4) Engineer Associate, in Clovis, which was filled by a transferred engineer-in-training; and (5) Engineer Associate, in Santa Fe, for which Hareesh Gowpada was initially selected.

### Engineer III Position

{27} Plaintiff first argues that, under *Weidler v. Big J Enterprises, Inc.,* 1998–NMCA–021, ¶ 30, 124 N.M. 591, 953 P.2d 1089, the issue of whether the Department articulated a non-discriminatory reason for its decision not to hire Plaintiff and to hire another applicant should be given whole record review. However, in *Weidler,* we stated that in reviewing a sufficiency of the evidence claim, we view the evidence in a light most favorable to the prevailing party and disregard any inferences to the contrary. *Id.* Accordingly, "[w]e simply review the evidence to determine whether there is evidence that a reasonable mind would find adequate to support a conclusion." *Id.* As stated earlier, whether a defendant intentionally discriminated against a plaintiff in a Title VII action is a factual question, reviewed for substantial evidence. *See Strata Prod. Co.,* 121 N.M. at 627, 916 P.2d at 827.

{28} Plaintiff argues that a line of Eleventh Circuit cases requires the Department to show that it considered the hired applicant's superior qualifications at the time the decision to hire was made in order to rebut Plaintiff's prima facie case of discrimination. *See Hill v. Seaboard Coast Line R.R.,* 767 F.2d 771, 774 (11th Cir.1985) (stating that the decision maker must show that he or she relied on qualifications at the time of the decision to hire). Because the United States Supreme Court explained in *Hicks,* 509 U.S. at 523–24, 113 S.Ct. 2742 that "Title VII does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action" for a discriminatory reason, we are not persuaded by this argument, which focuses on shifting burdens that are not strictly relevant to appellate review following a trial on the merits. *See Aikens,* 460 U.S. at 715, 103 S.Ct. 1478 (stating that when a Title VII case proceeds to trial all the evidence is before the district court, and the burden is with plaintiff to show that defendant had discriminative or retaliatory intent for action; thus there is no

need to indulge in *McDonnell Douglas* presumptions).

{29} In this case, the district court found that the Department had a legitimate, non-discriminatory reason to hire Charles Hatch and not Plaintiff as an Engineer III because Hatch had superior qualifications and expertise, including nineteen years of experience, and because the duties required in the vacant position were identical to the duties he was performing in his job at the time of his application. Documents admitted at trial on the parties' stipulation supported the finding that Hatch had more experience and superior qualifications.

■ {30} As the Department points out in its answer brief, there was substantial evidence, primarily in the form of documents admitted into evidence on stipulation of the parties, to support the district court's finding that the Department hired Hatch because he was better qualified for the position of Engineer III than Plaintiff. From a pool of seventeen qualified applicants, the four best-qualified were selected for an interview. Plaintiff had approximately twelve years experience as an engineer, and the highest position she had occupied with the Department was Engineer II.

{31} Plaintiff asserts that the district court's rejection of her requested findings was not supported by substantial evidence. Plaintiff specifically requested findings that the Department failed to articulate a reason for not hiring her. However, we regard the failure of a district court to make a finding of fact as a finding against the party seeking to establish the affirmative. *Landskroner v. McClure,* 107 N.M. 773, 775, 765 P.2d 189, 191 (1988); *see also Sosa v. Empire Roofing Co.,* 110 N.M. 614, 616, 798 P.2d 215, 217 (Ct.App.1990) ("[W]hen a finding is made against the party with the burden of proof, [the appellate court may] affirm such a finding if it was rational for the fact finder to disbelieve the evidence offered in support of that finding.").

■ {32} Thus, there was sufficient evidence to support the district court's finding that Hatch was hired because he had superior qualifications. It would also have been reasonable for the district court to find that the Department did not interview Plaintiff because her qualifications were not as strong. The Department personnel responsible for the hiring decision were not involved in the earlier litigation, and thus there was sufficient evidence for the district court to find that any failure to interview or hire Plaintiff was not discriminatory. "Once the defendant 'responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide' *not* ... whether that evidence is credible, but 'whether the rejection was discriminatory within the meaning of Title VII.'" *Hicks,* 509 U.S. at 518–19, 113 S.Ct. 2742 (quoting *Aikens,* 460 U.S. at 714–15, 103 S.Ct. 1478).

*Engineer I and Engineer Associate Positions*

{33} Plaintiff next argues that the district court's conclusions regarding the application of the second two factors in the *McDonnell Douglas* test were erroneous with regard to the other applications she made for positions within the Highway Department between August 1994 and July 1995. The district court concluded that the evidence established that the Department had non-discriminatory reasons for not hiring Plaintiff and that Plaintiff had failed to demonstrate that these reasons were pretextual. Because, under federal law, these determinations are factual rather than legal, and the ultimate question is whether the Department intentionally discriminated against Plaintiff, we again review them to determine if they are supported by substantial evidence.

{34} As the Department points out in its answer brief, with regard to the Highway Engineer I position in Grants, the district court found as follows:

The immediate supervisor for the position in Grants was Mohammad Moabed[.] Mr. Moabed interviewed Bovee and another applicant, Alvin Dominguez, for the position. Louis Najar, the District Construction Engineer, also participated in the interviews. Both Mr. Moabed and Mr. Najar concluded that Mr. Dominguez (who was working for the City of Roswell) was

better qualified than Bovee for the position. Mr. Moabed believed that Mr. Dominguez had more understanding of local government needs and more design experience, while Mr. Najar felt that Mr. Dominguez would have a better attitude, rapport and patience in dealing with the local governments, based on his responses to the interview questions. Ultimately, Joe Martinez, the head of District Six, selected Alvin Dominguez based on the unanimous recommendation from Mr. Moabed and Mr. Najar, and based substantively on Mr. Dominguez's "interview, familiarity of local government needs and his experience in design."

During the selection process, Mr. Martinez, asked Ferrary for general legal advice. Mr. Ferrary provided the advice. In addition, Mr. Martinez requested Mr. Moabed and Mr. Najar to allow Ferrary to review their proposed interview questions and selection criteria, which he did. Ferrary did not make any suggestions or changes. Ferrary was not otherwise involved in the selection process, and did not oversee or monitor that process and did not make, participate in or attempt to influence the selection.

Alvin Dominguez's application for employment submitted to the State Personnel Office was not false, misleading or deceptive concerning the dates of his licensure as a Professional Engineer, or his employment experience.

[The Department] had a legitimate, nondiscriminatory reason for its decision to hire Alvin Dominguez and not to hire Bovee[;] i.e., Mr. Dominguez was better qualified for this particular position than Bovee.

{35} Documentary evidence admitted in this case supports the district court's findings. An affidavit of Louis Najar states that he recommended Alvin Dominguez be hired for the position based on his responses to questions about how to deal with city funding, because he believed Dominguez had more experience than Plaintiff, and because his attitude toward problem solving appeared more appropriate. A memo from Mohammad Moabed to the District Engineer, Joe Martinez, stated that Dominguez was the better choice, based on the interview and certifications, because he had more understanding of local government needs and more design experience. Martinez then selected Dominguez based on "a combination of his interview, familiarity of local government needs and his experience in design."

{36} Plaintiff asserts that the Department's explanation of the reasons for the hiring of Dominguez instead of Plaintiff was pretextual because the Department's general counsel met with the interviewers. However, the district court heard evidence at trial that Ferrary, the general counsel who had been involved in the earlier litigation, had simply reviewed interview questions, and was not otherwise involved in the selection process. The district court weighed the evidence and decided that the motives for not hiring Plaintiff for the Highway Engineer I position were not intentionally discriminatory. As a consequence, the district court's finding was based on substantial evidence.

{37} Plaintiff argues that the reason she was not hired for the entry-level Engineer Associate positions, first advertised in Roswell and then transferred to Clovis, was also retaliatory. In regard to this claim, the district court made the following findings:

In August of 1994, Bovee also applied for an Engineer Associate position in [the Department]'s District Two Office[.]

The position was an entry-level position requiring 2½ years of experience, and could be under-filled with Engineer Junior or Assistant Engineer applicants, both of which ... required less than 2½ years of experience.

Bovee's experience far exceeded the minimum requirements for the position. Bovee previously had worked as Engineer II and had twelve years of experience. Bovee's name was the only name on the "eligible" list for the Engineer Associate position. The job paid approximately half of what Plaintiff had earned as Engineer II.

Buster Morrow was the immediate supervisor for the position. Mr. Morrow decided not to interview or hire Bovee for the entry-level position, because he was afraid

hiring her would cause problems with his crew, based on the crew's "grudge" against college-educated professionals ostensibly working under them.

Subsequently, the Engineer Associate position was transferred to Clovis, also within [the Department]'s District Two. Four individuals applied for this position, including Bovee.... The individuals conducting the interviews concluded that Bovee was "overqualified" for the position. Ultimately, Tom Dick, the District Engineer, decided not to select any of the four applicants, and instead transferred an Engineer–in–Training, who already was working [there], to fill the entry-level position.

During the early stages of the selection process[,] Tom Dick asked Ferrary a general legal question without identifying Bovee by name, to which Ferrary responded. Ferrary was not otherwise involved in the selection process, and did not oversee or monitor that process or make, participate in or attempt to influence [it].

[The Department] had a legitimate, non-discriminatory reason for its decisions to not fill the entry-level Roswell position at all, to transfer the position to Clovis and then fill that entry-level position with an Engineer–in–Training who already was working in that district.

{38} Plaintiff argues that the Department's reason for not hiring her, accepted by the district court, was false and not worthy of credence. However, because Plaintiff retains the burden of proof, the question for the factfinder at trial was not whether the Department's evidence was credible, but " 'whether the rejection was discriminatory within the meaning of Title VII.' " *Hicks,* 509 U.S. at 519, 113 S.Ct. 2742 (quoting *Aikens,* 460 U.S. at 715, 103 S.Ct. 1478). In this case, after a bench trial, the court as the factfinder simply weighed the evidence and found that Plaintiff's rejection was not discriminatory. This Court does not reweigh the evidence nor substitute its judgment for that of the factfinder. *Las Cruces Prof'l Fire Fighters,* 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177.

{39} Again, there is substantial evidence in the record to support the district court's findings. An affidavit of a Department employee states that Morrow did not want to hire Plaintiff, who was the only applicant for the Roswell position, because he believed it would cause problems with his staff. A departmental memorandum states that because Plaintiff had previously been employed as an Engineer II, she was overqualified for an Engineer Associate position. Although Plaintiff was the only applicant for the position when it was advertised in Roswell, four people applied for the position when it was advertised in Clovis. A departmental memorandum notes that Plaintiff and another person were both qualified, but Plaintiff was overqualified. However, the Department did not offer either of these applicants the job, filling it from within the Department. Thus, it did not single out Plaintiff for rejection.

{40} In support of the decision not to hire overqualified applicants, Department Secretary Pete Rahn testified that every time he had hired someone who was overqualified, his decision had proven to be unwise, because the person was not really interested in the job and only held the job while looking for a better one. Accordingly, the district court's findings were supported by substantial evidence on this issue.

{41} Plaintiff next argues that the findings and conclusions referring to her application for an Engineer Associate position in Santa Fe in the Department's Bridge Design Section were clearly erroneous. The district court found that the Department interviewed Plaintiff, Hareesh Gowpada, and possibly others for this position. Gowpada was selected based on his training, education, and experience in structural design. Plaintiff, on the other hand, did not have training, education, and experience in structural design. As the Department points out, because Gowpada's experience and training were better suited to the position, there was a legitimate, non-discriminatory reason for not hiring Plaintiff.

{42} Plaintiff argues that after Gowpada was unable to accept the position, because of his work status in the United States, the Department should have offered the position to her. Plaintiff does not discuss the person the Department eventually hired. Moreover,

during this time, Plaintiff wrote to Department Secretary Pete Rahn, asking him to investigate why she had not been offered a job. Following his investigation, Rahn wrote Plaintiff, informing her that she would not be considered for any position at the Department. Because we have determined that it was legitimate for the Department to reject Plaintiff based on her representations that she could not be an engineer, the Department also had a legitimate, non-discriminatory reason for not hiring Plaintiff for this position.

{43} Plaintiff argues that the decision not to offer her any of these positions is evidence of cumulative error on the part of the district court. Plaintiff argues that the involvement of the Department's general counsel in several of the hirings, along with evidence that other applicants less qualified than she were hired, supports the conclusion that the Department retaliated against her. Plaintiff therefore argues that the district court committed cumulative error in not providing her relief. However, because there was sufficient evidence to support the district court's findings that the Department had legitimate, non-discriminatory reasons for not hiring her, there was no error and thus no cumulative error. *See State v. Morales*, 2000–NMCA–046, ¶ 18, 129 N.M. 141, 2 P.3d 878.

*Amendment of the Complaint*

{44} Plaintiff appears to argue that the district court erred as a matter of law by not recognizing that the Department's reliance on Plaintiff's testimony about her inability to work discriminated against her on the basis of a disability (her inability to work). The argument that follows, however, focuses on the denial of Plaintiff's motion to amend the pleadings to include claims under the Americans with Disabilities Act (ADA) and the New Mexico Human Rights Act (NMHRA). Plaintiff argues on appeal that the district court should have permitted her to amend her pleadings to conform to the evidence presented and to include claims of disability discrimination under both the ADA and the NMHRA.

{45} At the conclusion of her case, Plaintiff's trial counsel moved to amend the pleadings to conform to the evidence pursuant to Rule 1–015 NMRA 2002. We note that Plaintiff never specifically sought to amend her complaint to include an NMHRA claim and therefore she did not preserve that issue. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App. 1987) ("Where the record fails to indicate that an argument was presented to the court below, unless it is jurisdictional in nature, it will not be considered on appeal."). Plaintiff's counsel did argue that he wished to amend the complaint to include an ADA claim. He then stated that Plaintiff was not seeking remedies under the ADA, but that in addition to retaliating against Plaintiff, the Department discriminated against her because it refused to hire Plaintiff because she was disabled.

{46} Under Rule 1–015, an amendment to conform to the evidence should be granted when doing so does not prejudice the opposing party. *See Camp v. Bernalillo County Med. Ctr.*, 96 N.M. 611, 613, 633 P.2d 719, 721 (Ct.App.1981) (stating that when there is no express or implied consent to a request to amend the pleadings to conform to the evidence, the test is whether prejudice would result to the opposing party). We review the denial of a motion to amend the complaint for an abuse of discretion. *Fernandez–Wells v. Beauvais*, 1999–NMCA–071, ¶ 15, 127 N.M. 487, 983 P.2d 1006. While amendments should generally be allowed, we will not reverse the district court's decision unless there is no reason to support the decision. *Id.*

{47} In this case, the Department argued that it was unprepared to defend against this newly announced claim, which appeared to be an ADA claim notwithstanding Plaintiff's counsel's statements to the contrary. The district court denied Plaintiff's motion to amend, finding that the defense would be prejudiced by the addition of an ADA claim so late in the case. Moreover, Plaintiff never asserted an ADA claim or a claim under the NMHRA when she filed her charge of discrimination, and thus she does not appear to have exhausted her administrative remedies on these claims. *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994)

(observing that as a general rule, a plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge). Therefore, there was a reasonable basis for the district court's decision to deny Plaintiff's motion to amend. *See Hourigan v. Cassidy,* 2001–NMCA–085, ¶ 29, 131 N.M. 141, 33 P.3d 891 (upholding a denial of a motion to amend on the grounds that it would be unreasonable, one week before trial, to permit new allegations that could change trial strategy).

{48} Without citation to authority, Plaintiff asserts that even if the district court did not abuse its discretion in denying the motion to amend, this Court must determine whether the district court correctly concluded that the Department's reliance on Plaintiff's earlier testimony that she was incapable of working as an engineer was not discriminatory. Plaintiff argues that the reason the Department refused to hire her was discriminatory because she was disabled. We do not discern a difference between this claim and the claim Plaintiff sought to add to her complaint, even though the discrimination is under the ADA, not under Title VII. Title VII's prohibition against retaliation prohibits an employer from discriminating against an employee or would-be employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a). It is the ADA that prohibits discrimination because of disability, and Plaintiff did not assert a timely ADA claim. Accordingly, we affirm on this issue and hold that the district court did not abuse its discretion when it denied Plaintiff's motion to amend.

*Breach of Contract and Civil Rights*

 {49} Plaintiff argued below and now on appeal that the Department's policy prohibiting retaliation constituted an employment contract. Policies of employers can be construed as implied employment contracts. *Trujillo v. N. Rio Arriba Elec. Coop., Inc.,* 2002–NMSC–004, ¶ 22, 131 N.M. 607, 41 P.3d 333 (stating that a representation in an employee handbook or personnel policies may contractually modify the at—will presumption). However, in this case, as the district court concluded, because Plaintiff's employment with the Department ended in 1993, long before she brought this action, she had no legal basis for a breach of contract claim. We affirm that ruling.

{50} Plaintiff also argues, very briefly, that the district court erred in dismissing her claim under 42 U.S.C. § 1983 (2000). In her complaint, Plaintiff stated that Department Secretary Rahn and others deprived her of her right to free speech and to petition the government under the First Amendment and violated her right to substantive due process. However, Plaintiff does not make a separate argument on this issue. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that issues "unsupported by cited authority will not be [considered] on appeal").

*Conclusion*

{51} We affirm the district court's ruling that the Department did not intentionally discriminate against Plaintiff. Because we affirm on the grounds articulated by the district court, we do not address the Department's estoppel argument.

{52} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and RODERICK T. KENNEDY, Judges.