538 P.2d 804

Ralph E. McNUTT and Delia S. McNutt, husband and wife, Leroy Urioste and Dolores M. Urioste, husband and wife, Ted Drennan and Patricia K. Drennan, husband and wife, Rialo Pollo and Elizabeth Ann Pollo, husband and wife, Jose B. Salazar and Doris R. Salazar, husband and wife, Plaintiffs-Appellants,

v.

NEW MEXICO STATE TRIBUNE COMPANY, a New Mexico Corporation, d/b/a the Albuquerque Tribune, Scripps Howard Publishing Company, a foreign Corporation, and Harry Moskos, Defendants-Appellees.

No. 1669.

Court of Appeals of New Mexico.

July 9, 1975.

Certiorari Denied Aug. 5, 1975.

Robert N. Singer, Coors, Singer & Broullire, Albuquerque, for appellants.

John B. Tittman, Keleher & McLeod, Albuquerque, for appellees.

## OPINION

HERNANDEZ, Judge.

Plaintiffs filed this case in tort alleging invasion of their right of privacy under three causes of action. The second count related to the Scripps Howard Publishing Company and was dismissed by agreement of counsel. The first count alleged an invasion of the privacy of plaintiffs by the defendant, New Mexico State Tribune Company, d/b/a The Albuquerque Tribune (Tribune). The third count alleged an invasion of the privacy of plaintiffs by the defendant, Harry Moskos. This appeal arises from an order granting defendants' motions for summary judgment. We affirm.

The facts are as follows: Two of the plaintiffs were members of the Albuquerque Police Department; three were members of the New Mexico State Police. The remaining plaintiffs are the respective wives of the officers.

During the early hours of January 29, 1972, these officers became engaged in a gun battle with two individuals who were attempting to steal dynamite from a highway construction site southwest of Albuquerque at a place called Black Mesa. In the aftermath, it was determined that the two individuals were members of a group known as the Black Berets. They were both killed.

On Monday, January 31, 1972, the Tribune carried an article covering the events at Black Mesa which gave the names and home addresses of the plaintiff officers. Defendant Harry Moskos was the city editor of the Tribune, which is published by the defendant, New Mexico State Tribune Company. Prior to publication of the January 31, story, defendant Moskos had called several of the officers, including plaintiffs McNutt and Urioste, seeking information for his article. The officers told Mr. Moskos that they had been instructed not to discuss the matter, and they referred him to their superiors. Urioste

and McNutt stated that Mr. Moskos said that he was going to print their names and addresses because they would not cooperate in giving the details he sought. Officer McNutt urged unsuccessfully that Moskos not publish these facts for his family's sake. Subsequent to publication of the article, several of the officers and members of their families received anonymous phone calls threatening violence.

Plaintiffs alleged that the publication of their names and addresses was done maliciously, and they prayed for punitive as well as actual damages.

Plaintiffs allege four points of error:

POINT I: "THE PLEADINGS RAISE SUBSTANTIAL ISSUES OF MATERIAL FACT WHICH MUST BE DECIDED BY A JURY, PARTICULARLY THE ISSUE OF NEWSWORTHINESS."

█ At the outset, we wish to clarify a matter concerning some of the pleadings about which we perceive plaintiffs to be confused. On July 11, 1972, defendants Moskos and the Tribune filed a motion pursuant to Rule 12(b)(6), Rules of Civil Procedure, § 21–1–1(12)(b)(6), N.M.S.A. 1953 (Repl.Vol. 4), to dismiss plaintiffs' complaint for failure to state a claim upon which relief could be granted. This motion was denied by the trial court on November 6, 1972. On January 15, 1974, the same defendants filed motions for summary judgment against all plaintiffs pursuant to Rule 56(c), § 21–1–1(56)(c), *supra*. On January 31, 1974, the trial court entered its order dismissing the complaint as to the wives of the police officers for the reason that their allegations failed to state a claim upon which relief could be granted. Thereafter, on February 12, 1974, the trial court granted the motions for summary judgment which dismissed plaintiffs' first and third causes of action with prejudice for the reason that the court could find no genuine issue of material fact warranting a trial. There is nothing in the record to indicate that the motion to dismiss for fail-

ure to state a claim was ever renewed by the defendants. We consider the trial court's order of January 31, 1974, a nullity since the prior motion of July 11, 1972, was rendered *functus officio* by its order of November 6, 1972. Therefore, the operant order appealed from is the one entered February 12, 1974, granting summary judgment against all the plaintiffs.

█ The trial court gave the following reasons for granting defendants' motion for summary judgment:

"That the names of these individuals and their addresses were within the public domain, or rather a matter of public record as such, if not official records . . .

"The court holds as a matter of law that this is a newsworthy article.

"That . . . to extend the cause of action . . . that is the invasion of privacy . . . would be to deny to the newspaper its Constitutional right of freedom of the press . . .

"Because while it might be a little more difficult to come in contact with an individual whose address has not been published than one who has, if the name is published, the name alone, anyone who would want to contact such an individual for whatever purpose, would have no difficulty in doing so, even by just identifying the individual in other respects, such as the position he holds, if there is only one position of that kind."

We agree with the reasoning of the trial court. New Mexico recognizes the tort of invasion of the right of privacy, i. e., the right to be let alone, as it is sometimes characterized. *Hubbard v. Journal Publishing Company*, 69 N.M. 473, 368 P.2d 147 (1962). However, as Dean Prosser informs us:

"The early cases in all jurisdictions were understandably preoccupied with the question whether the right of privacy existed at all, and gave little or no consideration to what it would amount to if it did. . . . As it has appeared

in the cases thus far decided, it is not one tort, but a complex of four . . . which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.'

. . . . . .

"[1] [T]he appropriation, for the defendant's benefit or advantages, of the plaintiff's name or likeness.

. . . . . .

"[2] [I]ntrusion upon the plaintiff's physical solitude or seclusion . . . [or into his private affairs].

. . . . . .

"[3] [P]ublicity, of a highly objectionable kind, given to private information about the plaintiff, even though it is true and no action would lie for defamation.

. . . . . .

"[4] [P]ublicity which places the plaintiff in a false light in the public eye." Prosser, Torts § 117 (4th ed. 1971).

■ Plaintiffs conceive of the defendants' publication as an invasion of their "right to seclusion" and as "public disclosure of personal matters of private life." Accepting *arguendo*, the correctness of their conception, we conclude that the actions of the defendants did not constitute an invasion of the privacy of the plaintiffs in either regard as a matter of law.

Prosser, Torts, pp. 810–811, *supra*, states:

"The facts disclosed to the public must be private facts, and not public ones. The plaintiff cannot complain when an occupation in which he publicly engages is called to public attention, or when publicity is given to matter such as date of his birth or marriage, or his military service record, which are a matter of public record, and open to public inspection."

■ The address of most persons appears in many public records: voting registration rolls, property assessment rolls, motor vehicle registration rolls, etc., all of which are open to public inspection. They also usually appear in such places as the telephone directory and city directory which are available to public inspection. We, therefore, hold that an individual's home address is a public fact and that its mere publication, without more, cannot be viewed as an invasion of privacy.

■ Assuming, but not deciding, that the publication of plaintiffs' addresses in these circumstances and the subsequent threats upon them constituted an intrusion upon plaintiffs' seclusion, we nonetheless believe that the publication was privileged.

■ The right of privacy is not unqualified. See *Blount v. T. D. Publishing Corporation,* 77 N.M. 384, 423 P.2d 421 (1966). One of the key qualifications to the right is where the individual's right of privacy conflicts with the first amendment's freedom of the press. In such a circumstance, the individual's right of privacy must yield to the greater public interest in the dissemination of newsworthy material. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964).

Furthermore, it makes no difference whether the person involved is a public official, a public figure or a private individual. Neither is a characterization of the subject matter of the publication as political, public or private concern of deterministive import.

"The guarantees for speech and press are not the preserve of political expression or comment upon public affairs, essential as those are to healthy government. One need only pick up any newspaper or magazine to comprehend the vast range of published matter which exposes persons to public view, both private citizens and public officials. Exposure of the self to others in varying degrees is a concomitant of life in a civilized community. The risk of this exposure is an essential incident of life in

a society which places a primary value on freedom of speech and of press.

. . . . . . .

"Those guarantees are not for the benefit of the press so much as for the benefit of all of us. A broadly defined freedom of the press assures the maintenance of our political system and an open society." *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967).

■ As to what is "newsworthy", we are impressed with and do hereby adopt the definition found in *Jenkins v. Dell Publishing Company, Inc.,* 251 F.2d 447 (3rd Cir. 1958):

"For present purposes news need be defined as comprehending no more than relatively current events such as in common experience are likely to be of public interest. In the verbal and graphic publication of news, it is clear that information and entertainment are not mutually exclusive categories. A large part of the matter which appears in newspapers and news magazines today is not published or read for the value or importance of the information it conveys. Some readers are attracted by shocking news. Others are titillated by sex in the news. Still others are entertained by news which has an incongruous or ironic aspect. Much news is in various ways amusing and for that reason of special interest to many people. Few newspapers or news magazines would long survive if they did not publish a substantial amount of news on the basis of entertainment value of one kind or another. This may be a disturbing commentary upon our civilization, but it is nonetheless a realistic picture of society which courts shaping new juristic concepts must take into account. In brief, once the character of an item as news is established, it is neither feasible nor desirable for a court to make a distinction between news for information and news for entertainment in determining the ex-

tent to which publication is privileged." [Footnotes Omitted.]

"There can be no doubt that reports of current criminal activities are the legitimate province of a free press. The circumstances under which crimes occur, the techniques used by those outside the law, the tragedy that may befall the victims—these are vital bits of information for people coping with the exigencies of modern life." *Briscoe v. Reader's Digest Association,* 4 Cal.3d 529, 93 Cal. Rptr. 866, 483 P.2d 34 (1971).

■ Plaintiffs, conceding *arguendo* the newsworthiness of the incident in question, assert nonetheless that publication of their addresses was not newsworthy or necessary to the report. We hold that their addresses *were* necessary. If an individual participates in a newsworthy event, proper identification of that individual is an essential part of the story. It is the usual practice in newspaper accounts to identify persons by giving their names and addresses so as to avoid confusion because many individuals have identical names.

Finally under this point, we feel compelled to comment on plaintiffs' allegation of "malice" in their complaint. The Supreme Court of the United States in *Sullivan, supra,* stated the following:

"The constitutional guarantees [First and Fourteenth amendments] require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' —that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

In *Time, Inc. v. Hill, supra,* the Supreme Court of the United States extended the privilege created in *Sullivan,* supra, to encompass the tort of invasion of privacy:

"We hold that the constitutional protections for speech and press preclude the application of the New York statute [New York Civil Rights Law] to redress

false reports of matters of public interest in the absence of proof that the defendant published the report with knowledge of its falsity or in reckless disregard of the truth. . . . We create a grave risk of serious impairment of the indispensable service of a free press in a free society if we saddle the press with the impossible burden of verifying to a certainty the facts associated in news articles with a person's name, picture or portrait, particularly as related to non-defamatory matter. Even negligence would be a most elusive standard, especially when the content of the speech itself affords no warning of prospective harm to another through falsity.

. . . . . .

"But the constitutional guarantee can tolerate sanctions against calculated falsehood without significant impairment of their essential function."

The use, by the Supreme Court, of the term "malice", in *New York Times Co. v. Sullivan, supra*, has caused some confusion, i. e., an assumption that a showing of "malice" nullifies the privilege. It does not. As Dean Prosser comments:

"It is certainly highly unfortunate that the Court chose to cling to the discredited term 'malice', which has meant all things to all men, and is here highly misleading. A much better word would have been 'scienter', since the state of mind required is obviously the same as in deceit actions for intentional misrepresentations. Where this is proved, there is no doubt that there can still be liability." Prosser, Torts, p. 821, *supra*.

In commenting upon the use of the term, "malice", in the Supreme Court's opinion in *Sullivan, supra*, the Supreme Court of Hawaii has said:

" 'actual malice' has become a term of art clearly distinguishable from the ordinary definition of 'malice' in terms of ill will, . . . 'actual malice' consists of 'deliberate falsification' of facts or 'reckless disregard' of the truth, i. e., reckless

publication despite a high degree of awareness, harbored by the publisher, of the probable falsity of the published statements." *Tagawa v. Maui Publishing Company*, 448 P.2d 337 (Haw.1969).

In *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), the Supreme Court of the United States further defined what they had meant by "actual malice" in *Sullivan*:

". . . reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."

Accepting that Mr. Moskos may have harbored ill will toward the plaintiff officers; such a harboring does not constitute "actual malice" as is required by *New York Times Co. v. Sullivan, supra*.

POINT II: "THE PLAINTIFFS WERE DENIED DUE PROCESS OF LAW, IN THE COURT'S CONDUCT AND CONSIDERATION OF THE MOTION FOR SUMMARY JUDGMENT, IN THAT:

(A) THE HEARING WAS UNTIMELY, AND CONDUCTED WITHOUT ADEQUATE NOTICE;

(B) THE COURT CONSIDERED MATTER NOT PROPERLY IN EVIDENCE; AND

(C) THE COURT MADE FACTUAL DETERMINATIONS."

First, as to sub-points (A) and (B), there is nothing in the record to indicate that they were raised below; consequently, they cannot be considered here. *Gurule v. Albuquerque-Bernalillo Co. Economic Op. Bd.*, 84 N.M. 196, 500 P.2d 1319 (Ct.App.1972).

As to sub-point (C), plaintiffs argue that, "the court of necessity invaded the function and province of the jury in making its own factual determination on the issue of newsworthiness." Deciding Point I, as we do, we find no error in the trial court's handling of the newsworthiness issue, and we therefore, decide this sub-point adversely to appellants.

POINT III: "THE RULING OF THE COURT ON THE MOTION TO DISMISS WAS *RES–JUDICATA* TO THE MOTION FOR SUMMARY JUDGMENT."

Appellants are mistaken. A motion to dismiss a complaint for failure to state a claim upon which relief can be granted merely tests the legal sufficiency of the complaint. *C & H Constr. & Pav., Inc. v. Foundation Reserve Ins. Co.*, 85 N. M. 374, 512 P.2d 947 (1973). Pursuant to such a motion, only the allegations of the complaint are to be considered, and those allegations that are correctly pleaded are to be viewed as admitted. Legal conclusions or inferences that may be drawn from the allegations by the pleader are not admitted. *First National Bank of Santa Fe v. Rue-bush*, 62 N.M. 42, 304 P.2d 569 (1956). Therefore, the denial by the trial court of the defendants' motion did not constitute an adjudication on the merits and did not operate to restrict the trial court's consideration of the subsequent motions for summary judgment.

POINT IV: "THE WIVES HAD A SEPARATE AND ACTIONABLE RIGHT OF PRIVACY STATED IN THE COMPLAINT."

Assuming, but not deciding, that plaintiffs' contention is valid, we have already decided that the publication was privileged; that privilege runs in favor of all defendants and against all of the plaintiffs.

The summary judgment entered below is accordingly affirmed.

It is so ordered.

SUTIN and LOPEZ, JJ., concur.