F I L E D
**United States Court of Appeals
Tenth Circuit**

**July 13, 2007**

**Elisabeth A. Shumaker
Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VICENTE ALVARADO, YVETTE
ALVARADO, STEVE FLORES,
PRISCILLA FLORES, THOMAS
GUTIERREZ, BEVERLY
GUTIERREZ,

     Plaintiffs-Appellants,

v.

KOB-TV, L.L.C. (Channel 4 News),

     Defendant-Appellee.

No. 06-2001

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-05-750)**

---

Jason Bowles, (B.J. Crow with him on the briefs) Bowles & Crow, Albuquerque,
New Mexico for Plaintiffs-Appellants.

Geoffrey D. Rieder, (Travis G. Jackson, with him on the brief) Foster & Rieder,
P.C., Albuquerque, New Mexico, for Defendant-Appellee.

---

Before **KELLY, EBEL,** and **GORSUCH**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Two former undercover police officers for the City of Albuquerque brought suit against a local television station, KOB-TV, for broadcasting their identities and their undercover status in the context of their suspected involvement in an alleged incident of sexual assault. The officers were never charged, and about a week after the broadcasts, the city police department announced publicly that it had concluded the officers were not involved in the alleged sexual assault. The officers sued KOB-TV for invasion of privacy and intentional infliction of emotional distress. The district court dismissed their claims under Fed. R. Civ. P. 12(b)(6). While we are sympathetic to the difficult and potentially dangerous situation undercover officers face after having their identities revealed to the public, we agree with the court below that the officers' allegations do not support a tort claim for either invasion of privacy or emotional distress. Because Alvarado and Flores fail to state a claim upon which relief can be granted, it is unnecessary for us to reach the issue of whether KOB-TV's First Amendment defense merited dismissal of the claims. Accordingly, we AFFIRM dismissal of their claims.

## I. BACKGROUND

Vicente Alvarado and Steve Flores were undercover police officers for the City of Albuquerque in early 2004. According to the facts alleged by Alvarado and Flores in their complaint, around May 3, 2004, Syra Roman called the

Albuquerque Police Department to report that she had been sexually assaulted by two undercover officers. The detective taking the call asked her to obtain a physical examination and follow up with him within a couple of days, but apparently she did neither. A week later, a detective with the police department apprehended Roman on the basis of an outstanding warrant, and told her that, if she gave a statement about the alleged sexual assault, she would not be booked on that warrant. She gave the requested statement, describing her alleged assailants, and the police department released her. A couple of weeks later, one of Roman's friends contacted the detective who had taken Roman's statement. The friend suggested that Alvarado and Flores were the two officers involved in the sexual assault.

On June 2, a police department captain told Alvarado and Flores to report to the deputy chief's office about some allegations, but they were not told the nature of those allegations. The same day, a state district judge signed warrants to authorize searches of their homes and vehicles. The judge sealed the warrants to the extent of Alvarado's and Flores's names and addresses, citing potential endangerment to the officers and interference with investigative activities. However, the court order sealing the warrants was not addressed to KOB-TV, nor did it mention the press generally.

At a time uncertain, someone provided KOB-TV with information about the sexual assault allegations and the investigation, naming Alvarado and Flores. On

June 3, KOB-TV ran newscasts at 6 p.m. and 10 p.m. about the investigation in which Alvarado and Flores were named as being accused of the sexual assault. KOB-TV also ran video footage of Alvarado and Flores each answering the door to their respective homes and telling the reporter that they did not wish to comment.

At some point, someone informed KOB-TV that Alvarado and Flores were undercover narcotics officers. During the 10 p.m. newscast on June 3, KOB-TV announced that the news station had learned they were undercover detectives and therefore blurred their faces. However, KOB-TV did not remove their names from that broadcast or subsequent broadcasts. KOB-TV ran coverage of the investigation for several days and posted the news stories on the internet, although no charges were brought. On June 8, KOB-TV reported that the officers had been cleared by DNA evidence and by evidence that one of the officers was not in the state on the day of the alleged assault. Furthermore, the accuser, Roman, later recanted her allegations. But according to Alvarado and Flores, the damage was done. They claim their "lives have been threatened since the time that their names and identities were released to the general public," and they continue to "fear for their lives and that of their families."

Alvarado and Flores and their respective spouses, Yvette Alvarado and Priscilla Flores (collectively, "Plaintiffs"), brought suit against the City of Albuquerque for defamation, false imprisonment and violations of their

- 4 -

constitutional right to privacy.[1] The suit also named KOB-TV as a defendant, alleging invasion of privacy and intentional infliction of emotional distress. Plaintiffs specifically claimed that KOB-TV "violat[ed] a court order" and "subject[ed] Plaintiffs . . . to serious physical harm or even death." The City removed the entire action to federal court because the Plaintiffs brought a claim under 42 U.S.C. § 1983 and 5 U.S.C. § 552a(b), thus stating a federal question providing for federal district court jurisdiction under 28 U.S.C. § 1331.

The United States District Court of the District of New Mexico ruled for KOB-TV on a Rule 12(b)(6) motion to dismiss. Alvarado v. KOB-TV, LLC, No. 05-750, slip op. (D.N.M. Nov. 14, 2005). The court held that Plaintiffs' allegations "d[id] not meet the contours" of invasion of privacy and intentional infliction of emotional distress. Id. at 10-13. The court concluded also that, on

---

[1] Officer Thomas Gutierrez and his wife, Beverly Gutierrez, also were plaintiffs in the combined suit against the City of Albuquerque and KOB-TV. The Albuquerque Police Department questioned officer Gutierrez in connection with the alleged sexual assault, but KOB-TV did not mention him in any of its broadcasts about the investigation. The Gutierrez Plaintiffs also appeal this district court's ruling, but they do not allege in their complaint or on appeal that KOB-TV injured them. Because Article III standing requires that a plaintiff allege an injury-in-fact that has a causal connection to the defendant and is redressable by a favorable court decision, Opala v. Watt, 454 F.3d 1154, 1157 (10th Cir. 2006), and because we have sua sponte authority to examine Article III standing, Rector v. City & County of Denver, 348 F.3d 935, 942 (10th Cir. 2003), we hold that Thomas and Beverly Gutierrez do not have standing to bring this appeal.

We observe as well that after Beverly Gutierrez filed a notice of appeal, she moved before the district court to dismiss herself from the case, and the district court granted that motion. However, she never removed herself from this appeal.

the facts alleged, the First Amendment would bar relief through tort law. Id. Further, the court decided that even if the order sealing Alvarado and Flores's names from the search warrants applied to the media, it would have been an unconstitutional prior restraint. Id. at 9. Because the district court concluded that the plaintiffs' claims against KOB-TV failed as a matter of law, it did not convert KOB-TV's motion to dismiss into one seeking summary judgment, despite the fact that the parties had submitted to the court evidence outside the pleadings. Id. at 5.

This appeal followed. We have jurisdiction over an appeal from a final order of dismissal from a district court, pursuant to the district court's amended order of dismissal under Fed. R. Civ. P. 54(b). See 28 U.S.C. § 1291.

## II. DISCUSSION

### A. *Standard of Review*

We review de novo a district court's decision on a Rule 12(b)(6) motion for dismissal for failure to state a claim. Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir. 1995). "We must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." David v. City & County of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996). "We look for

plausibility in th[e] complaint." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1970 (2007).[2]

In reviewing a Rule 12(b)(6) motion to dismiss, our first step is to review the factual allegations that should have been considered by the district court. See, e.g., Prager v. LaFaver, 180 F.3d 1185, 1188 (10th Cir. 1999). On a Rule 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). "[I]n general, a motion to dismiss should be converted to a

_____

[2]In Bell Atlantic, the Supreme Court stated that the old standard, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Bell Atlantic Corp., 127 S. Ct. at 1968-69. Although the Supreme Court was not clear on the articulation of the proper standard for a Rule 12(b)(6) dismissal, its opinion in Bell Atlantic and its subsequent opinion in Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), suggest that courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. See Iqbal v. Hasty, 2007 U.S. App. LEXIS 13911 (2d Cir. 2007) (considering Bell Atlantic and Erickson and concluding that a "plausibility" standard was what the Supreme Court intended).

Although we now restate our Rule 12(b)(6) standard in order to bring it into compliance with Bell Atlantic, we emphasize that in this case our decision would be the same regardless of whether we used the old "no set of facts" standard, see, e.g., David, 101 F.3d at 1352, or adopt either a plausibility standard or a requirement that the complaint include factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp., 127 S. Ct. at 1965.

summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." Prager, 180 F.3d at 1188. However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). "The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is reversible error unless the dismissal can be justified without considering the outside materials." GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997) (emphasis added).

In the proceedings below, Plaintiffs submitted to the district court a copy of the court order sealing Alvarado's and Flores's names and addresses, and KOB-TV submitted a certified transcript of excerpts of the audio portion of at least some of the broadcasts in question and a DVD containing copies of those broadcasts. In a hearing on the motion, the court acknowledged it had reviewed the transcript of the broadcasts. KOB-TV described some aspects of the video for the court, arguing that Flores's image was too fuzzy to identify him, and that the broadcasts never gave the addresses of either Flores or Alvarado. Plaintiffs argued that they needed an opportunity to conduct discovery on "all of the broadcasts, exactly what they . . . released," adding that they were "not sure

[KOB-TV] produced all of them." Plaintiffs also argued that dismissal on a Rule 12(b)(6) motion was inappropriate because they needed discovery on "the circumstances under which [Alvarado's and Flores's names were] disclosed and what [KOB-TV] knew."

On appeal, Alvarado and Flores argue that the district court "impermissibly viewed all of the facts in the light most favorable to the Defendant," and that it ruled "prematurely" on the motion to dismiss and should have accorded them an opportunity for "full discovery."[3] Although the district court stated it did not rely on the parties' additional submissions, there would have been no error for the court to consider the court order sealing Alvarado's and Flores's identities, as the sealing order was "central" to Plaintiffs' claims against KOB-TV and "the parties do not dispute the document['s] authenticity." See id. However, the transcript and copy of the broadcasts likely should have been excluded, since Plaintiffs argued to the district court that KOB-TV may not have released all of the relevant portions of the broadcasts.[4]

---

[3] Alvarado and Flores do not argue expressly that the district court should have excluded KOB-TV's broadcast submissions from consideration or that the court should have converted the Rule 12(b)(6) motion to a motion for summary judgment. But because our review of a motion to dismiss is de novo, we consider what pleadings and attachments the district court relied on for its conclusions of law, and whether it was proper to resolve the case on a 12(b)(6) motion.

[4] Although Alvarado and Flores have attached excerpts of the certified transcript to the appellate record, "we will not consider evidence that was not before the district court." Wilburn v. Mid-South Health Dev., Inc., 343 F.3d

(continued...)

- 9 -

Yet, in this case "dismissal can be justified without considering the outside materials," GFF Corp., 130 F.3d at 1384, because we agree with the district court that, given the facts alleged in Alvardo's and Flores's complaint, their claims fail as a matter of law. Therefore, any error on the part of the district court in not excluding the broadcasts from the motion to dismiss was harmless. We conclude that the district court properly proceeded to dispose of the claims against KOB-TV on a Rule 12(b)(6) motion.

## B. Invasion of Privacy Claim

Alvarado and Flores allege that KOB-TV invaded their privacy by broadcasting their names and images on local television. They claim that KOB-TV "with negligence, gross negligence, or recklessness published private facts about Plaintiffs and intruded into their private seclusion, thereby giving unreasonable publicity to their private lives" and "had no newsworthiness or other privilege" to do so. However, New Mexico follows most states in defining privacy torts strictly. We conclude that the facts as alleged by Alvarado and Flores cannot state a claim for invasion of privacy.

---

[4](...continued)
1274, 1281 (10th Cir. 2003). This rule, articulated in the context of reviewing a lower court's decision on summary judgment, applies with equal force to the documents not properly before the district court on a motion to dismiss.

New Mexico recognizes the tort of invasion of privacy and its four categories: false light, intrusion, publication of private facts, and appropriation. Andrews v. Stallings, 892 P.2d 611, 625 (N.M. Ct. App. 1995); see also McNutt v. N.M. State Tribune Co., 538 P.2d 804, 807 (N.M. Ct. App. 1975) (characterizing the four torts as having in common "the right to be let alone"). Plaintiffs' complaint does not specify which categories their claims fall within, but the factual allegations relate only to the torts of intrusion and publication of private facts.[5]

"Intrusion into solitude appears to be based on the manner in which a defendant obtains information, and not what a defendant later does with the information, which is covered by the public-disclosure-of-private-facts branch." Fernandez-Wells v. Beauvais, 983 P.2d 1006, 1010 (N.M. Ct. App. 1999); see also Moore, 881 P.2d at 743 (commenting, in dictum, that intrusion is "distinct from but related to trespass," and "involves an invasion of the plaintiff's 'private' space or solitude – eavesdropping on private conversations or peeping through the bedroom window, for example" (quotation omitted)); McNutt, 538 P.2d at 808 (defining the tort as an "intrusion upon the plaintiff's physical solitude or

_____

[5] Alvarado and Flores do not allege that KOB-TV published false information about the sexual assault allegations (only that the allegations themselves were false), nor that KOB-TV appropriated their image for commercial purposes. See Moore v. Sun Publ'g Corp., 881 P.2d 735, 743 (N.M. Ct. App. 1994) (elaborating on the required elements of false light and appropriation).

seclusion or into his private affairs" (alterations, quotation omitted)).  New Mexico has not outlined the specific contours of this particular tort.  Therefore, we follow the lead of New Mexico courts defining privacy torts generally, see, e.g., McNutt, 538 P.2d at 808, and Moore, 881 P.2d at 743, and thus look for guidance to Prosser & Keeton on Torts (W. Page Keeton ed. 5th ed. 1984) (hereinafter "Prosser & Keeton") and the Restatement (Second) of Torts ("Restatement").

The comments to the Restatement are particularly helpful, suggesting that the tort of intrusion becomes actionable only when it is deemed "highly offensive to a reasonable person," and usually involves a physical invasion into someone's space.  Restatement § 652B & cmts. b and d.  "The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home."  Id. cmt. b.  "[T]here is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt.  It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded."  Id. cmt. d; see also Prosser & Keeton § 117, at 855 ("[t]here is no tort when the landlord stops by on Sunday morning to ask for the rent").

Alvarado and Flores do not allege that KOB-TV reporters tried to badger their way into the officers' homes, or that they repeatedly approached the Alvarado and Flores at home. Although the tort of intrusion may be implicated "when the plaintiff . . . is merely in the seclusion of his home," id. at 856, Alvarado and Flores do not claim that KOB-TV obtained footage through their windows or other intrusive means.[6] The facts as alleged by Alvarado and Flores simply cannot give rise to the claim of intrusion upon seclusion, and thus the district court properly dismissed this claim.

The appellants likewise fail to state a claim for the alternate theory of invasion of privacy – public disclosure of private facts. The tort of public disclosure is defined in New Mexico as "disclosure which would be objectionable to a reasonable person, and a lack of legitimate public interest in the information." Fernandez-Wells, 983 P.2d at 1008 (citing Prosser & Keeton § 117, at 856-57 and Restatement § 652D).[7] Unlike defamation, there is no requirement that the publicized information be false. McNutt, 538 P.2d at 808 (citing Prosser

---

[6] Were we to consider, in addition to the pleadings, the broadcasts themselves in reviewing this appeal from a motion to dismiss, we would note that both Alvarado and Flores answered and opened their respective front doors, where a KOB-TV reporter and TV camera waited. As such, they voluntarily acted to bring themselves temporarily out of the seclusion of their homes. See Restatement § 652B cmt. c and d ("Nor is there liability for observing him or even taking his photograph while he is walking on the public highway;" "[t]here is no liability for knocking at the plaintiff's door.").

[7] Publicity also is an element of public disclosure of private facts, which obviously is met here. See Fernandez-Wells, 983 P.2d at 1008.

§ 117). The tort of publication of private facts "involves the publication of true but intimate or private facts about the plaintiff, such as matters concerning the plaintiff's sexual life or health." Moore, 881 P.2d at 743 (quotation omitted).

The questions, then, are whether the disclosures of publication of the following facts, which Alvarado and Flores allege KOB-TV broadcast, would be objectionable to a reasonable person, and whether there is a lack of legitimate public interest in the information:

- Alvarado's and Flores's names;
- their home addresses, by virtue of film footage of each plaintiff answering his door at home, under appellants' theory that Albuquerque's neighborhoods are very unique and it would be easy to identify where someone lived by such footage;
- what they look like/their personal appearance, by virtue of the same film footage; and
- the fact that Flores and Alvarado were undercover police officers for the Albuquerque Police Department.

A New Mexico appellate court dealt with a somewhat similar fact pattern in McNutt. There, police officers engaged in a gun battle with two members of a group known as the "Black Berets" and killed both of them. 538 P.2d at 806. A newspaper printed the names and addresses of the officers, allegedly "because they would not cooperate in giving the details" about the incident. Id. at 807. After the article was published, several officers and members of their families received threatening phone calls. Id. The McNutt court concluded that the officers' addresses were not, as a matter of law, "private facts." Id. at 808. Because "[t]he address of most persons appears in many public records . . . which

- 14 -

are available to public inspection," "an individual's home address is a public fact and . . . its mere publication, without more, cannot be viewed as an invasion of privacy." Id. Likewise, a person's image in and of itself is not a "private fact." Some commentators suggest that while pictures made of someone "without [their] consent in a private place" may trigger liability, "anything visible in a public place can be recorded and given circulation by means of a photograph." Prosser & Keeton § 117 at 859.[8] But Plaintiffs' complaint here does not allege that KOB-TV obtained images of Alvarado and Flores without their consent or in a private place.

However, Alvarado and Flores allege public disclosure of a unique private fact – their status as undercover officers. The McNutt court had reasoned that "[t]he plaintiff cannot complain when an occupation in which he publicly engages is called to public attention," 538 P.2d at 808 (quotation omitted), but here the appellants were not "publicly engage[d]" in being undercover police officers. Alvarado and Flores argue that undercover officers face special risks in that, if their identities are revealed, they are more likely than publicly-known officers to

_____

[8] The Fifth Edition of Prosser & Keeton cautions readers that "merely because a fact is one that occurred at a public place . . . or merely because it can be found in a public record, does not mean that it should receive widespread publicity if it does not involve a matter of public concern." § 117 at 859. However, we look first to New Mexico cases as the source of New Mexico tort law, and the McNutt court relied on the availability of names and addresses in the public record in concluding that the officers failed to state a claim. In any event, we conclude that reporting on alleged misconduct of police officers is a "matter of public concern." See infra.

- 15 -

be targets for revenge. In fact, they allege that they received threats as a result of the broadcasts. Publicity of this kind of information is "objectionable to a reasonable person."

For Alvarado and Flores to state a claim under the tort of public disclosure of private facts, they must allege a lack of a legitimate public interest. "[N]ot all matters are of legitimate public interest." Gilbert v. Medical Econs. Co., 665 F.2d 305, 307 (10th Cir. 1981) (applying Colorado law). In Gilbert, we endorsed the position taken by the Restatement (Second) of Torts on what type of matters are of public interest:

> The line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake with which a reasonable member of the public, with decent standards, would say that he had no concern.

Id. at 307-08 (quoting Rest. § 652D cmt. h). As New Mexico courts also rely on the Restatement to define the contours of public disclosure of private facts, we believe they would agree.

Courts have generally treated allegations of police misconduct as worthy of public interest. See, e.g., Cowles Publ'g Co. v. Wash. State Patrol, 748 P.2d 597, 605 (Wash. 1988) ("We . . . conclude that a law enforcement officer's actions while performing his public duties or improper off duty actions in public which bear upon his ability to perform his public office do not fall within the activities to be protected under the Comment [h] to § 652D of Restatement (Second) of

- 16 -

Torts as a matter of 'personal privacy.'"); Santillo v. Phila. Newspapers, Inc., 21 Pa. D. & C. 4th 413, 419 (Pa. Com. Pl. 1993) ("Police officers have no valid basis for believing that criminal conduct committed by them in their official capacity will not be publicized for all to read.").

To the extent First Amendment law informs our determination of whether Alvarado and Flores can allege facts showing that publicity of their identities and undercover status in the context of the alleged sexual assault was not a matter of public interest, we are among a number of courts that have found that police misconduct allegations specifically and officer qualifications generally are a matter of public interest in First Amendment analyses.[9]

_____

[9] Because we hold that Alvarado and Flores's claims must be dismissed for failure to state a claim, we do not reach the question of whether KOB-TV's First Amendment defense would bar their claims. See United States v. Cusumano, 83 F.3d 1247, 1250 (10th Cir. 1996) (en banc) ("[F]ederal courts should address constitutional questions only when necessary to a resolution of the case or controversy before it.").

However, we observe that state law now defines torts involving publication to take into account First Amendment restrictions announced by the Supreme Court. See, e.g., Newberry v. Allied Stores, Inc., 773 P.2d 1231, 1236 (N.M. 1989); see also Restatement § 652D, Special Note. Specifically, the determination of what is a "legitimate concern to the public" often dovetails with the explanation for "public official" designations for purposes of analyzing a publisher's First Amendment defense. See New York Times Co. v. Sullivan, 376 U.S. 254, 282-83 (1964) (holding that under the First Amendment, published criticism of a public official in matters that are of interest to the public is not actionable absent actual malice on the part of the publisher); Garrison v. Louisiana, 379 U.S. 64, 77 (1964) ("The New York Times . . . public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant. Few personal attributes are

(continued...)

- 17 -

Street level policemen . . . [have] such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds [such a position] . . . . Misuse of his authority can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and financial loss. The strong public interest in ensuring open discussion and criticism of his qualifications and job performance warrant the conclusion that he is a public official.

Gray v. Udevitz, 656 F.2d 588, 591 (10th Cir. 1981) (quotation omitted). See also Meiners v. Moriarity, 563 F.2d 343, 352 (7th Cir. 1977) ("The public is certainly interested in an important and special way in the qualifications and performance of federal agents, such as the defendants here, whose decisions to search and to arrest directly and personally affect individual freedoms."); Coursey v. Greater Niles Twp. Publ'g Corp., 239 N.E.2d 837, 841 (Ill. 1968) (noting that "the public has a far greater interest in the qualifications and conduct of law enforcement officers, even at, and perhaps especially at, an 'on the street' level"). An officer's alleged involvement in a sexual assault, even if off-duty, surely bears upon his or her qualifications and fitness to be a police officer. Publicity of undercover police officers allegedly involved in a sexual assault thus qualifies as a matter of public interest in First Amendment law, and we have no reason to perceive a significant difference in New Mexico tort law.

---

[9](...continued)
more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character.").

Therefore, Alvarado and Flores's privacy claim hinges on a proposed exception for undercover officers, i.e., that disclosure of their identities "lacks legitimate public interest" as a matter of law. We can find no precedent for such an exception, and we are not inclined to create one here merely on policy grounds, despite our concerns about the safety of undercover officers and the need to avoid disincentives for entering their profession.

There are many individuals who enter official roles knowing that there are inherent risks in doing so. All police officers, not just those undercover, face a risk of violent retaliation simply by having their names associated with an arrest or investigation. It would be impossible for courts to quantify the amount of risk that a person faces in having his or her name in the news, and to carve out an exception on that basis for purposes of tort law. In addition to the difficulty we would face in applying such a rule, we observe that such an exception could run afoul of the First Amendment.

Alvarado and Flores point to a federal law, 50 U.S.C. § 421, that criminalizes disclosure of the identity of covert intelligence agents as support for a policy exception for undercover officers generally. However, 50 U.S.C. § 421 only criminalizes the disclosure of the identity of federal (not city or state) undercover agents, and only when that disclosure comes from someone who "had authorized access to classified information that identifies a covert agent," had authorized access to classified information and "learns the identity of a covert

agent," or was engaged in "a pattern of activities intended to identify and expose covert agents." In other words, Congress arguably has not significantly implicated the public's interest in an open discussion of law enforcement personnel, because the law only applies to disclosure by someone who had authorized access to classified information (e.g., a government official) or someone engaged in a "pattern" with the intention of exposing agents. Section 421 does not represent a national policy of criminalizing publicity of a covert agent's identity. If New Mexico's tort law is to be expanded to assign liability for such conduct, it will be up to New Mexico to do so. Indeed, our exercise in judicial restraint ought not to be misread as an effort to preclude the people of the State of New Mexico from deciding for themselves whether to assign liability in tort to the public disclosure of the names or appearance of undercover police officers. To be sure, any rule of law adopted in this area would implicate core and vital First Amendment values, and it is far from clear whether and how such a law might coexist with the freedom of the press. But any foray into these thickets is, in the first instance, for the instruments of government in the State of New Mexico, not us, and therefore are not issues we need reach today.

Moreover, courts have not defined the tort of public disclosure of private facts in a way that would obligate a publisher to parse out concededly public interest information, e.g., sexual assault allegations against two members of the police department, from allegedly private facts, e.g., the officers' identities and

- 20 -

undercover status. We have held that publication of a person's photograph and name was in the public interest when it was "substantially relevant to a newsworthy topic," in that case, medical malpractice, and because the additional identifying information "strengthen[ed] the impact and credibility of the article." Gilbert, 665 F.2d at 308. Other courts also appear to give "public interest" status to news material on an aggregate basis, rather than itemizing what in the news report would qualify and what could remain private. See, e.g., Ross v. Midwest Commc'ns, Inc., 870 F.2d 271, 274-75 (5th Cir. 1989) (ruling on a privacy claim where a television show about the potential innocence of an accused rapist used a rape victim's first name and photograph of her house at the time of the rape, holding that not only was the story behind the rape "a matter of legitimate public interest," but also using her name and picture of her residence helped "persuade the public, and in turn authorities, to a particular view of particular incidents").

In short, for Alvarado and Flores to state a claim under the tort of public disclosure of private facts, they must be able to allege facts from which we could conclude that the publication was not in the public interest. Because allegations of police misconduct are in the public interest, and because there is no exception in the law for undercover officers, Alvarado's and Flores's claim cannot survive a Rule 12(b)(6) motion to dismiss.

*C.  Claims for Intentional Infliction of Emotional Distress*

Alvarado and Flores also fail to state a claim for intentional infliction of emotional distress, a tort that requires extreme conduct on the part of the defendant.  Even if we assume KOB-TV was aware of the sealing order shielding Alvarado's and Flores's identities from the search warrants, we cannot conclude as a matter of law that KOB-TV's actions qualify for the type of conduct that could trigger liability under a claim of intentional infliction of emotional distress.

New Mexico law follows the Restatement (Second) of Torts § 46 in defining the tort of intentional infliction of emotional distress:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. The extreme and outrageous conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Newberry v. Allied Stores, Inc., 773 P.2d 1231, 1239 (N.M. 1989) (quotation omitted).  According to the Restatement, the tort is actionable for reckless conduct,[10] defined as "deliberate disregard of a high degree of probability that the emotional distress will follow," "and also where he knows that such distress is

---

[10] It is not clear that New Mexico recognizes the recklessness standard for this tort, but cases have referred to that standard in dicta.  See, e.g., Andrews, 892 P.2d at 624; Akutagawa v. Laflin, Pick & Heer, P.A., 126 P.3d 1138, 1143-44 (N.M. Ct. App. 2005).  Because we hold that KOB-TV's conduct does not trigger liability even under that lower standard, we need not decide whether New Mexico courts would apply it.

certain, or substantially certain, to result from his conduct." Restatement (Second) of Torts § 46 cmt. i. "As a threshold matter, the trial court should determine as a matter of law whether the conduct at issue reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress." Trujillo v. N. Rio Arriba Elec. Coop., 41 P.3d 333, 343 (N.M. 2001) (quotation omitted). "When reasonable persons may differ on that question, it is for the jury to decide, subject to the oversight of the court." Id. (quotation omitted).

Courts regularly hold that upsetting but true news reports do not constitute conduct so extreme and outrageous as to permit recovery. Specifically, a New Mexico court has stated that "[a]s a general proposition, accurate publication of newsworthy events does not give rise to a cause of action for intentional infliction of emotional distress." Andrews, 892 P.2d at 625. Other courts agree. See, e.g., Lowe v. Hearst Commc'ns, Inc., 414 F. Supp. 2d 669, 676 (W.D. Tex. 2006) (concluding that the "[p]ublication of truthful, albeit embarrassing, information has again and again been determined not to constitute extreme and outrageous conduct"); Conroy v. Kilzer, 789 F. Supp. 1457, 1468 (D. Minn. 1992) (holding that statements that "accuse a public official of misconduct" are not "as a matter of law . . . sufficiently extreme and outrageous"); Munoz v. Am. Lawyer Media, L.P., 512 S.E.2d 347, 351 (Ga. Ct. App. 1999) (concluding that "the tort of intentional infliction of emotional distress will not provide a remedy to a plaintiff

- 23 -

when the news media truthfully reports an actual newsworthy event, even if the event was so insulting as naturally to humiliate, embarrass or frighten the plaintiff").[11]  Although this rule of thumb is at least in part a reflection of First Amendment constraints on tort law, see, e.g., Howell v. N.Y. Post Co., 612 N.E.2d 699, 705 (N.Y. 1993), it also serves to help the court "determine as a matter of law" whether the complained-of publication is "so extreme and outrageous," Trujillo, 41 P.3d at 343, as to give rise to liability.

New Mexico courts generally have construed the tort of intentional infliction of emotional distress narrowly in the context of press coverage.  One

---

[11] We note, however, that the Fourth Circuit has reversed dismissal of an intentional infliction of emotional distress claim based on news reports, holding that "[d]epending upon the circumstances surrounding the publication and the nature of the defamatory charge, a defamatory publication could be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  Hatfill v. New York Times Co., 416 F.3d 320, 336 (4th Cir. 2005) (quotation omitted).  The *New York Times* had identified the plaintiff as being suspected of involvement in anthrax mailings and published columns commenting directly on the suspect – not just the investigation.  Id. at 325-28.  The Fourth Circuit held that the plaintiff's allegations supported a claim for intentional infliction of emotional distress, even if "the relevant constitutional limitations" eventually could bar the claim.  Id. at 336-37.

We likewise do not find that New Mexico has a per se rule that prohibits a claim of intentional infliction of emotional distress if it is based on the publication of news reports.  The "general proposition" announced in Andrews, 892 P.2d at 625, that "accurate publication of newsworthy events does not give rise to a cause of action for intentional infliction of emotional distress," is not tantamount to a categorical bar.  Instead, we conclude that Alvarado and Flores fail to state a claim because they have not alleged facts upon which "reasonable persons [could] differ," Trujillo, 41 P.3d at 343, as to whether the material in KOB-TV's broadcasts or KOB-TV's news-gathering methods were extreme or outrageous.

- 24 -

New Mexico court concluded that there was no intentional infliction of emotional distress when a newspaper reported on the plaintiff's controversial land purchase, resulting in a zoning dispute that created title problems, and then published an article suggesting that the plaintiff, a local politician, might sue his own village over the zoning dispute. Andrews, 892 P.2d at 625. The Andrews court concluded that news coverage of zoning requests and politicians' statements could not be "beyond all bounds of decency" or "utterly intolerable," and therefore could not form the basis of an emotional distress claim. Id. Likewise, the federal district court in New Mexico declined to allow a claim when *Business Week* magazine published an article referring to a former business leader's transsexual status. "[T]he references to Plaintiff's transsexual status were highly relevant to the central inquiry of the article. In short, there is nothing extreme or outrageous about Defendants' conduct." Schuler v. McGraw-Hill Cos., 989 F. Supp. 1377, 1391 (D.N.M. 1997), aff'd 145 F.3d 1346, 10th Cir. 1998 (table).

The mere broadcast of Alvarado's and Flores's identities and undercover status, as facts revealed in the course of "accurate publication of newsworthy events," is not actionable as intentional infliction of emotional distress. Andrews, 892 P.2d at 625. But Alvarado and Flores argue that KOB-TV acted outrageously by broadcasting their names and the fact that they were undercover police officers repeatedly for four days even after being advised of their covert status, and possibly after learning of the risks of that publicity or the fact that a court had

sealed documents relating to their undercover status. Alvarado and Flores contend that this conduct is actionable as intentional infliction of emotional distress, and argue that further discovery was warranted to ascertain whether KOB-TV knew of the court order sealing Alvarado's and Flores's names.

But even if publishers are aware that their actions could result in third parties making threats to the individuals identified in the news, courts considering the issue generally find that publishing news under those circumstances is not conduct "beyond all possible bounds of decency," "atrocious," or "utterly intolerable." The Sixth Circuit found a plaintiff could not create a jury question on the issue of intentional infliction of emotional distress when two reporters published photographs of an undercover officer, one of them captioned "Know Your Enemies," accompanied by a "news article decrying the activities of undercover narcs in the Ann Arbor area." Ross v. Burns, 612 F.2d 271, 272 (6th Cir. 1980). Even though the court seemed skeptical of the article's newsworthiness, the court concluded that "[w]e cannot believe that these acts fall within the meaning of 'extreme and outrageous' conduct contemplated by the drafters of the Restatement." Id. at 724. In another example, the media revealed the identity of a foreign judge who was threatened by a Colombian drug cartel and had taken up a quiet residence in Detroit. A state court found that "defendants' conduct was not so outrageous or extreme to establish liability in tort in light of the fact that plaintiffs used their own names and did not attempt to

completely hide their identities while in Detroit." Duran v. The Detroit News, Inc., 504 N.W.2d 715, 720 (Mich. Ct. App. 1993).

It is true that courts sometimes need the benefit of additional discovery to decide whether the content and reasonableness of a defendant's alleged conduct falls within the tort of intentional infliction of emotional distress. See, e.g., Parnell v. Booth Newspapers, Inc., 572 F. Supp. 909, 920 (W.D. Mich. 1983) (declining to grant summary judgment on an emotional distress claim against a newspaper that published photos of the plaintiff in news articles on prostitution, contrasting its decision with that in Ross where "the ruling was on a motion for a judgment n.o.v."). However, we conclude that even if KOB-TV knew about the court order sealing Alvarado's and Flores's identities from the search warrants, KOB-TV's broadcasts would not have been "so outrageous" as to be actionable. Significantly, the order is not directed at the news media generally nor at KOB-TV specifically.[12]

More importantly, Alvarado and Flores do not allege that KOB-TV knew of any actual or likely threats against the undercover agents. Instead, under the facts put forth by Alvarado and Flores, KOB-TV at most was aware only of the inherent risks involved with publicizing the names and pictures of undercover

---

[12] At the district court hearing on the motion to dismiss, Plaintiffs conceded that the court sealing order was not directed at the media and argued that it was merely "an additional fact" for the court to consider.

officers. That imputed knowledge hardly equates with recklessly or intentionally causing severe emotional distress.

In short, the weight of authority suggests that accurate news reporting – even when it is likely to have an adverse impact on the subjects of the report – usually does not give rise to an action for intentional infliction of emotional distress, and Alvarado and Flores have alleged no facts that support an exception to the general rule. We affirm dismissal of this claim.

## III. CONCLUSION

Although we appreciate the risks faced by undercover agents such as Alvarado and Flores, tort law sets a high bar for invasion of privacy and intentional infliction of emotional distress claims. The district court correctly concluded that the Appellants here failed to state a claim, and therefore dismissal under Rule 12(b)(6) was proper. We AFFIRM the decision of the district court.