GORSUCH, Circuit Judge,
concurring in part and dissenting in part.
I agree with my colleagues’ thoughtful analysis of the proximate cause issue and their conclusion that Dr. Swerdlow has not shown, as a matter of law, that his initial affidavit was so weak or contradictory it would have necessarily failed to defeat summary judgment in the underlying state malpractice action. But we may of course affirm the district court for any grounds supported by the record, see, e.g., Proctor v. United Parcel Serv., 502 F.3d 1200, 1206 (10th Cir.2007), and I respectfully submit that a review of the complaint yields multiple other grounds upon which the district court’s decision should be affirmed.
In Bell Atl. Corp. v. Twombly, — U.S. -, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court changed the way we look at motions to dismiss under Fed.R.Civ.P. 12(b)(6). Prior to Twombly, every law student learned from their civil procedure professors the familiar Conley refrain that dismissal is inappropriate under Fed.R.Civ.P. 8 and 12 unless it appears beyond doubt that the plaintiff can prove “no set of facts” entitling it to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In Twombly, the Supreme Court “retired” Conley and instructed that we must determine whether a complaint has set forth factual allegations sufficient to “raise a right to relief above the speculative level.” Id. at 1965. In doing so, we “look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.” Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 n. 2 (10th Cir.2007).[1]
*1076 The scenario the Supreme Court addressed in Twombly bears striking similarities to the one we face today. There, the plaintiffs alleged that the Baby Bells had entered into a conspiracy to restrain trade in violation of Section 1 of the Sherman Act, Twombly, 127 S.Ct. at 1962, and pointed to the Bells’ parallel conduct as evidence of such a conspiracy, id. at 1964. But the Court emphasized that parallel business conduct can be consistent either with an illegal conspiracy or with legal pro-competitive business strategies. Id. Because the plaintiffs had failed to identify facts plausibly suggesting, rather than merely raising the possibility of, an illegal agreement, the Court dismissed the case.
Here, plaintiffs have alleged facts showing that Dr. Swerdlow changed his expert opinion. But, as in Twombly, the facts alleged regarding Dr. Swerdlow’s change of opinion could rationally support at least two opposing inferences. First, one might infer that his behavior was unprofessional — Dr. Swerdlow changed his opinion, we are encouraged to surmise, because he feared counsel’s “meanness” and threat to attack Dr. Swerdlow’s medical license. Changing one’s opinion for such reasons, plaintiffs seem to assert, amounts to professional malpractice or some other form of tortious conduct. Second, and very differently, one might just as easily suppose that Dr. Swerdlow simply and honestly changed his professional opinion about the propriety of Dr. Shuput’s actions as he learned more about those actions.
It is, of course, not clear whether Utah recognizes the doctrine of absolute witness immunity, and if it does not, whether it is possible to state a claim for professional malpractice or some similar tort against one’s own expert witness. Maj. Op. at 1075. But, even supposing that Utah would allow such a suit, plaintiffs’ allegations fall well short of the line Twombly has drawn. If Twombly means anything, it means that plaintiffs had to plead some facts that would, if proved, allow a jury to infer both that Dr. Swerdlow’s change of opinion was something other than an innocent and professional reassessment of his expert opinion in light of newly considered evidence and that his change of opinion caused their damages.
Perhaps most obviously, one might’ve addressed these issues by alleging (if the facts permitted it) that another expert, provided with all the information available to Dr. Swerdlow at the time he changed his opinion, still would’ve thought Dr. Shuput engaged in malpractice — just as in Twombly, had plaintiffs alleged some facts suggesting a conspiratorial agreement rather than mere parallel conduct, their complaint might well have survived. As it is, however, we are given no facts suggesting that any responsible physician, after reviewing the full record, would’ve thought Dr. Shuput’s conduct constituted malpractice. Without factual allegations along these or similar lines, plaintiffs have pled neither a breach of any imaginable standard of care (however broadly that might be defined), nor causation of damages.
The insistence on factual allegations tending to suggest actionable rather than innocent conduct is not mere formalism. Rather, the Supreme Court emphasized that it serves at least two vital purposes— to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, Twombly, 127 S.Ct. at 1964, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of “a largely groundless claim,” id. at 1966. Specifically, in Twombly the Supreme Court was concerned that allowing a claim to proceed that was just as likely predicated on lawful business con *1077 duct as on an alleged conspiracy posed a serious risk of penalizing legitimate and even pro-competitive conduct. Id. at 1964.
Here, we have cause for even greater concern. Allowing this claim to march along sends the message to would-be expert witnesses: Be wary — very wary — of changing your mind, even when doing so might be consistent with, or compelled by, the standards of your profession. Neither can there be any doubt this is exactly the message plaintiffs wish to send, candidly explaining, as they do, that their real beef with Dr. Swerdlow was his failure to “deliver[] the expert liability opinion he had promised the Paces all along.” Appellant’s Opening Br. at 32. In our legal system, demanding that experts “deliver” a specified opinion, as opposed to their honest judgment, is supposed to be ethically out-of-bounds — not the basis for a cause of action.[2]
Parties already exert substantial influence over expert witnesses, often paying them handsomely for their time, and expert witnesses are, unfortunately and all too frequently, already regarded in some quarters as little more than hired guns. When expert witnesses can be forced to defend themselves in federal court beyond the pleading stage simply for changing their opinions- — -with no factual allegation to suggest anything other than an honest change in view based on a review of new information — we add fuel to this fire. We make candor an expensive option and risk incenting experts to dissemble rather than change their views in the face of compelling new information. The loser in all this is, of course, the truth-finding function and cause of justice our legal system is designed to serve.[3]
* * *
Even putting aside Twombly and the lack of any factual allegations suggesting tortious conduct by Dr. Swerdlow, additional essential elements of the various torts plaintiffs allege are obviously missing, and no purpose is served by remanding this matter except needlessly to drag *1078 out this case further and increase the parties’ litigation costs.
By way of example only:
We today remand to the district court for further adjudication plaintiffs’ claim for negligent infliction of emotional distress. In Utah, however, such a claim appears to require that the plaintiff feared physical injury or peril. Lawson v. Salt Lake Trappers, Inc., 901 P.2d 1013, 1016 (Utah 1995). And plaintiffs have not alleged any facts (or even made any conclusory assertions) that they feared physical injury from Dr. Swerdlow’s change of opinion.
Plaintiffs also bring claims for fraud and negligent misrepresentation. Under Utah law, both claims require, among other things, a false representation of a material fact. See Larsen v. Exclusive Cars, Inc., 97 P.3d 714, 716 (Utah Ct.App.2004); De-Bry v. Valley Mortgage Co., 835 P.2d 1000, 1008 (Utah Ct.App.1992). Yet, plaintiffs fail to identify any representations of fact made by Dr. Swerdlow that satisfy these criteria. While plaintiffs conclusorily claim that Dr. Swerdlow misrepresented his qualifications, they fail to identify any factual discrepancies between Dr. Swerdlow’s qualifications in actuality and as represented. There are, for example, no allegations that Dr. Swerdlow is not in fact a licensed anaesthesiologist competent to present his expert opinion to the court, or that any particular item on his resumé was false. Neither do plaintiffs appear to allege any false statements by Dr. Swerdlow about his experiences serving as an expert. To be sure, plaintiffs point to Dr. Swerdlow’s deposition, in which he stated that he had “never testified in trial.” Compl. ¶ 84. But they fail to allege that Dr. Swerdlow had ever told them otherwise. Plaintiffs also point to Dr. Swerdlow’s statement that he “is a relative novice at this whole thing.” Compl. ¶ 83. But the statement was made in the context of explaining why Dr. Swerdlow had not asked if Dr. Shuput’s deposition had been taken before his own, Compl., Ex. E, at 152, and familiarity with the mechanics of the civil litigation discovery process is hardly a characteristic one would necessarily expect in someone holding himself out as an expert in anaesthesiology. Because plaintiffs have not alleged that Dr. Swerdlow made any representations to dispel this assumption, their claims should fail as a matter of law.
For the foregoing reasons, and with respect for my colleagues’ considered views, I am unable to join fully the court’s judgment.

. Although some initially argued that Twombly is confined to the antitrust context, see Keith Bradley, Pleading Standards Should Not Change After Bell Atlantic v. Twombly, 102 Nw. U.L.Rev. Colloquy 117 (2007), most courts, including our own, have since held that its effect on pleading standards is considerably broader. See, e.g., Alvarado, 493 F.3d at 1215 n. 2, Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069-70 (10th Cir.2008); Iqbal v. Hasty, 490 F.3d 143, 157 n. 7 (2d Cir.2007); Phillips v. County of Allegheny, 515 F.3d 224, 231-32 (3d Cir.2008); see also Scott Dodson, Pleading Standards Af *1076 ter Bell Atlantic v. Twombly, 93 Va. L.Rev. In Brief 121 (July 9, 2007).

. See Model Code of Prof'l Responsibility Canon 7-28 (1983) ("Witnesses should always testify truthfully and should be free from any financial inducements that might tempt them to do otherwise.... [A] lawyer may pay or agree to pay an expert witness a reasonable fee for his services as an expert. But in no event should a lawyer pay or agree to pay a contingent fee to any witness.”); Id. at Disciplinary Rule 7-109 ("A lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his testimony ...”); Model Rules of Prof'l Conduct R. 3.4 cmt. (2004) ("[I]t is improper to pay an expert witness a contingent fee.”).

. To be sure, plaintiffs complain that, even if Dr. Swerdlow was entitled to change his opinion, he should have done so before his deposition. In aid of this, plaintiffs allege (over Dr. Swerdlow’s vociferous denial) that they provided Dr. Swerdlow a transcript of Dr. Shuput's testimony at some — indeterminate—point prior to his own deposition. Compl. ¶ 52. But because, as the majority agrees, expert testimony was a necessary predicate to plaintiffs’ success in state court, Maj. Op. at 1073-74, and because plaintiffs have failed to allege that any other expert with full knowledge of the record would’ve testified for them, or in other words have failed to allege any facts suggesting Dr. Swerdlow's behavior caused summary judgment to be granted against them, they shouldn't be able to recover any damages based on the value of a judgment in their favor in the underlying action. Any recovery necessarily would be limited to the costs and fees they incurred in maintaining their case after the point at which a reasonable expert would have revised his or her opinion. And, this, of course, would be the case only if Utah would recognize professional malpractice claims against expert witnesses and would not apply the doctrine of absolute witness immunity. See Maj. Op. at 1075 (noting the unresolved issue of potential witness immunity).