# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MORRIS, JUETTEN, and MURDOUGH
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Major STEPHEN L. NELSON**
**United States Army, Appellant**

ARMY 20250399

Headquarters, U.S. Army Center for Initial Military Training and Fort Eustis
Pamela L. Jones, Military Judge
Lieutenant Colonel Jeffrey A. Gilberg, Special Trial Counsel

For Appellant: Captain Louis S. Steiner, JA; Daniel Conway, Esquire; Scott R. Hockenberry, Esquire (on brief and reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Vy T. Nguyen, JA; Major Stephen L. Harmel, JA; Captain Andrew T. Bobowski, JA (on brief).

4 May 2026

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MURDOUGH, Judge:

"In a criminal trial, the accused has a right to testify. But one risk of testifying, recognized long ago, is that the trier of fact may disbelieve the accused's testimony and then use the accused's statements as substantive evidence of guilt in connection with all the other circumstances of the case." *United States v. Nicola,* 78 M.J. 223, 227 (C.A.A.F. 2019) (citing *Rock v. Arkansas,* 483 U.S. 44, 52 (1987); quoting *Wilson v. United States,* 162 U.S. 613, 620-21 (1896). In this case, the government failed to adequately authenticate the document that was the instrumentality of the crime, and the military judge erred in admitting it. Then the appellant's testimony perfected the evidentiary foundation and, along with the other evidence in the case, established his guilt beyond a reasonable doubt.

An officer panel convicted appellant, contrary to his plea, of one specification of conduct unbecoming an officer in violation of Article 133, Uniform Code of

Military Justice, 10 U.S.C. § 933 [UCMJ]. The military judge sentenced him to be reprimanded and to forfeit $2,000 pay per month for two months.

Appellant asserts that his conviction is factually and legally insufficient, that the specification fails to state an offense, that his conviction violates due process, and that the military judge erred in admitting, over his objection, the document that was the instrumentality of the offense. We agree only with this last assertion, but we find that the military judge's nonconstitutional error was harmless under the facts of this case, and we affirm the findings and sentence.[1]

## BACKGROUND

### A. Facts of the Offense

Appellant and his wife were physically separated and headed toward a divorce. She was living apart from him in Michigan with their children. While appellant was visiting, he set into motion a plan to have his wife involuntarily evaluated for a mental illness with the goal of having her hospitalized.

Appellant traveled to a private clinical facility known as Network 180. He met with Mr. ███, a clinician, who spoke with appellant and then completed a Petition for Mental Health Treatment, form PCM 201. This petition would later become marked and admitted over defense objection as Prosecution Exhibit 2 (PE 2). The pre-typed form text in Paragraph 3 of PE 2 reads in part, "I believe the individual [appellant's wife] has a mental illness and . . . as a result of that mental illness, the individual can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure self or others, and has engaged in an act or acts or made significant threats that are substantially supportive of this expectation." Paragraph 4, including both form text and typewritten entries, reads in part, "The conclusions stated above are based on [appellant's personal observation that his wife] stated she wants to kill herself" and further that "[appellant's wife] reportedly called her parents ███ and ███] asking that someone come take her 2 and 4-year-old children as she was afraid she would harm them."

The attestation on PE 2 reads "I declare under the penalties of perjury that this petition has been examined by me and that its contents are true to the best of my information, knowledge, and belief." Mr. ███ typed the annotation: "Signed with permission /s/ Stephen Nelson" in the space labeled "Signature of petitioner."

---

[1] We have given full and fair consideration to the remaining assignments of error, including the matters appellant personally submitted pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and, except for one matter discussed briefly in footnote 10, *infra,* determine they merit neither discussion nor relief.

Appellant did not fill out the information in PE 2, nor did he sign it. Network 180 forwarded the petition to the Kent County Probate Court.

A probate court judge reviewed the petition the same day and issued a corresponding Order for Examination/Transport, Form PCM 209a, authorizing and ordering a peace officer to take appellant's wife into protective custody and transport her to "any local emergency room" for a mental health examination. This order would later become marked and admitted without objection as PE 4. The probate court sent the paperwork back to Network 180, which then contacted appellant to pick it up.

Appellant picked up the paperwork, including PE 2 and PE 4, and reviewed it. He then submitted it to the Grand Rapids Police Department on the same day. Two days later, Officer ███ of the Grand Rapids Police contacted appellant to coordinate taking his wife into custody. Appellant met Officer ███ and a social worker at the house where his wife was staying. Officer ███ and the social worker took appellant's wife into custody and brought her to a local emergency room, as ordered by the probate court. A physician examined appellant's wife and completed a Clinical Certificate, Form PCM 208, indicating that she was "not a person requiring treatment" and further "has been determined to have NOT made those statements [listed on the petition, PE 2]" (emphasis in original). This certificate would later be marked and admitted over defense objection as PE 5.[2]

Appellant was charged, *inter alia*, with one specification of Conduct Unbecoming an Officer in violation of Article 133, UCMJ, which alleges in pertinent part that he "wrongfully submit[ted] a false statement under penalty of perjury, to wit: '[his wife] stated she wants to kill herself' or words to that effect and 'she was afraid she would harm [her children]' or words to that effect, which statement was false . . . and that such conduct, under the circumstances, constituted conduct unbecoming an officer" (second bracketed alteration in original).

*B. The Admission of PE 2*

At trial, the government repeatedly offered PE 2 as a record of regularly conducted activity, commonly referred to as a "business record," under Mil. R. Evid. 803(6). The government first attempted to authenticate PE 2 through the testimony of appellant's wife, based on little more than the fact that her name and personal information was on the document. The military judge swiftly sustained appellant's objection to this attempt.

---

[2] The government offered, and the military judge accepted, this document as a "physical examination paper," one of the listed examples of a "record of regularly conducted activity" under Mil. R. Evid. 803(6)(E).

Next, the government called Officer ███, a police officer from the Behavioral Health Unit of the Grand Rapids Police Department. He, along with a social worker, executed the custody order and transported appellant's wife to the hospital. He identified PE 2 as "the initial petition for mental health that I would have obtained to serve." He testified that he had "personal knowledge of the *contents* of that document" (emphasis added). Then the government again offered PE 2 into evidence. Appellant again objected, and the military judge asked the trial counsel if the witness was able to properly authenticate it, because "he said he just received it." The Military Judge then sustained the objection before her.

The government tried again. Trial counsel asked officer ███ if he had personal knowledge of "how these documents and similar documents are regularly maintained." Officer ███ responded, "These documents are filled out and initially constructed at Network 180 . . . . it's sent to probate court, signed by the judge, sent back to Network 180. My unit picks them up from Network 180 . . . ." Then the trial counsel asked, "is that a record that's kept in the course of regularly conducted activity *for the Behavioral Health Unit for Grand Rapids Police Department?*" (emphasis added), and further asked "is making that record a regular practice of *that activity,* sir?" (emphasis added). Officer ███ responded affirmatively to both questions. The government again offered PE 2 into evidence as a record of regularly conducted activity; appellant again objected to the document as hearsay and also asserted a Confrontation Clause objection. The trial judge again sustained the objection to PE 2, saying, "Government, if you can get this witness to clarify who actually filed the petition, I'll reconsider your request to admit it into evidence."

Trial counsel then asked, "were you aware of who the author of this petition was." Officer ███(inaccurately) testified, "The document specifically is saying that it was signed by Stephen Nelson." He further testified that he called the number associated with the petitioner, and the person who answered the phone identified himself as Stephen Nelson. Officer ███ did not ask appellant if he had, in fact, made the statements attributed to him on the form or if he had been the one to submit it to the police department. The government once again offered PE 2 into evidence.

This precipitated an Article 39(a) session, at which appellant argued that Officer ███ was not a qualified witness to authenticate the document as a business record of Network 180, that appellant had not personally signed the document, that Officer ███ had no personal knowledge of when and how the document had been created, and that Mr. ███, the person who purported to sign it on appellant's behalf, was not present to testify thus violating the Confrontation Clause. The military judge briefly addressed the authentication objection, ruling that Officer ███ was a qualified witness because he was "generally familiar with the recordkeeping system"[3] and "The court is not concerned about the witness not being from

---

[3] The military judge relied on *United States v. Garces,* 32 M.J. 345, discussed *infra.*

[Network] 180." She then issued a more comprehensive oral ruling overruling the Confrontation Clause objection, finding that the document was not prepared with an eye toward trial, was not made in response to a prosecutorial or law enforcement inquiry, and did not involve more than a routine and objective cataloging of unambiguous factual matters. At the conclusion of the Article 39(a) session, the military judge admitted PE 2 into evidence. Mr. ▮▮ was never a listed prosecution witness, nor did the government ever call him or anyone else from Network 180 to testify.

During the defense case in chief, the appellant testified about all offenses of which he had been accused.[4] Relevant to PE 2, he testified that he met with Mr. ▮▮ for about 25 minutes but did not fill out any forms. He testified that he did not see PE 2 until he returned to Network 180 later that day to pick up the paperwork, including PE 2 and PE 4 (the signed order from a probate judge). On direct examination, he testified that he opened the packet and reviewed PE 2. He expressed displeasure at some of the things written there, notably that his father-in-law had been included, because appellant had asked Mr. ▮▮ to leave out his father-in-law's name.

On direct examination, appellant testified that he was "irritated" with the contents of PE 2 and "thought it was sloppily done," but "when I looked at the form and the statements of the form – those statements, while being a summary of 25 minutes of intake, I believe those statements are true." On cross, he was far more equivocal, refusing to directly admit that he had made the statements on the form or words to their effect, but describing the statements as "his [Mr. ▮▮] assessment of my intake." Eventually he admitted, "I made statements that led him [Mr. ▮▮] to write that [the statements on the form]." On both direct and cross-examination, he acknowledged that, notwithstanding any misgivings, he submitted the packet including PE 2 and PE 4 to the Grand Rapids Police Department so that his wife would be taken into custody for an involuntary mental health examination.[5]

## LAW AND DISCUSSION

We review the military judge's decision to admit evidence for an abuse of discretion. *United States v. Upshaw,* 81 M.J. 71, 74 (C.A.A.F. 2021) (citation

---

[4] Appellant was acquitted of three additional offenses related to his wife.

[5] Elsewhere during the government's case in chief, appellant's wife and both her parents flatly denied making the statements attributed to them in PE 2. Additionally, Officer ▮▮ body camera recording was admitted into evidence without objection, documenting the initial encounter, detention, and transportation of appellant's wife, during which she made statements to the effect that appellant's allegations about her mental state were untrue.

omitted). "[M]ilitary judges abuse their discretion (1) if the findings of fact upon which they predicate their ruling are not supported by the evidence of record; (2) if they use incorrect legal principles; or (3) if their application of the correct legal principles to the facts is clearly unreasonable." *United States v. Wilson*, 84 M.J. 383, 390 (C.A.A.F. 2024). "To find an abuse of discretion requires more than a mere difference of opinion – the challenged ruling must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. McElhaney,* 54 M.J. 120, 132 (C.A.A.F. 2000) (citation and internal quotation marks omitted).

The government and military judge framed the evidentiary foundation for this document as a hearsay exception for a record of regularly conducted activity. This was not the most appropriate lens through which to view this exhibit. The evidentiary significance of this document was not its truth; rather it was relevant to show that appellant "submitted" the purportedly false statements contained therein. In other words, it was the instrumentality of the crime and as such was a verbal act establishing an element of the charged offense, not a hearsay statement offered for its truth. *See United States v. Burke,* 495 F.2d 1226, 1232 (5th. Cir. 1974) (statements which are "elements of the crimes charged" are "verbal acts," not hearsay); *c.f. United States v. Mounts,* 2 C.M.R. 20, 24 (C.M.A. 1952) ("the hearsay rule is inapplicable" to verbal acts); *United States v. Dababneh,* 28 M.J. 929, 935 n.6 (N.M.C.M.R. 1989) ("verbal acts are not hearsay").

Initially, the military judge correctly recognized the issue as one of authenticity, rather than hearsay. She also questioned whether the government's evidence showed "who *filed*" (i.e. who "submitted") the statements attributed to the appellant, which was the correct question. But as the discussion diverted toward hearsay and Confrontation, she reached the wrong conclusion.

The true evidentiary dispute was not over the elements of a hearsay exception, but rather the basic authenticity of this document—whether it was what the government claimed it was. Mil. R. Evid. 901(a). Even though imperfect, the framework for a record of regularly conducted activity *might* have adequately authenticated appellant's statements, but the government did not complete the proper foundation for this hearsay exception. A record of regularly conducted activity is, *inter alia,* "made at or near the time by – or from information transmitted by – someone with knowledge" of the "act, event, condition, opinion, or diagnosis" in the record. Mil. R. Evid. 803(6)(A). Sufficient foundation of this element *could* have also authenticated the document as one that, if not personally created by the appellant, was nonetheless reflective of his statements that he later ratified and subsequently "submitted." The military judge correctly cited *United States v. Garces* for the notion that a "qualified witness" under Mil. R. Evid. 803(6)(D) need not be the custodian of the record, but any witness "shown not only to have knowledge of the declarant's business, but also some knowledge of the particular activity of the business which *generates* the report." 32 M.J. 345, 348 (C.M.A.

1991) (citation and internal quotation marks omitted) (emphasis added). Yet she applied this principle incorrectly.

The government's foundation, and military judge's resultant ruling, relied solely on how the records were maintained "in the course of regularly conducted activity for the Behavioral Health Unit for Grand Rapids Police Department." Prosecution Exhibit 2 is not a police department record, and the government skipped over how these petitions in general, and this petition in particular, were generated. Officer ███ testified only that petitions like PE 2 are "initially constructed at Network 180;" he had no knowledge of *how* Network 180 generates these petitions, let alone did he (or could he) attest that PE 2 had been created "at or near" the time Mr. ███ met with appellant and recorded his statements. Officer ███ personal knowledge of the history of PE 2 began when it first came to him, two days *after* it was generated and when it was already in his department's possession.[6] No "witness with knowledge" testified to how PE 2 was created; this omitted not only one of the elements of a record of regularly conducted activity but the key fact that would have authenticated the exhibit. Thus, even if the "business record" exception could have been sufficient to validate Mr. ███ annotation that the statements came from the appellant, it did not do so in this case.

Moreover, when the military judge accepted PE 2 into evidence, not only were the statements attributed to the appellant not properly authenticated, no evidence of record *at all* showed how it had traveled from the probate court and ended up in the hands of the police, i.e. the key fact that appellant had personally taken PE 2 from Network 180 and submitted it to the Grand Rapids Police Department. Fundamentally, at the time she admitted PE 2 into evidence, the military judge abused her discretion—her findings of fact on the question of authenticity (to the extent she made any at all) find no support in the record, she in part applied incorrect legal principles, and to the extent she applied correct principles, she did so in a clearly erroneous manner.

If we find error, we review "the prejudicial effect of an erroneous evidentiary ruling *de novo*." *United States v. Kohlbek,* 78 M.J. 326, 334 (C.A.A.F. 2019) (citation and internal quotation marks omitted). If the judge's error implicated appellant's Sixth Amendment confrontation right, we will reverse unless the error was harmless beyond a reasonable doubt. *United States v. Israel,* 60 M.J. 485, 488 (C.A.A.F. 2005) (citation omitted). "For nonconstitutional evidentiary errors, the test for prejudice is whether the error had a substantial influence on the findings." *Kohlbek,* 78 M.J. at 334 (citation and internal quotation marks omitted). As we have already determined that PE 2 itself was not hearsay, the Confrontation Clause does

---

[6] When asked if he was "aware" who the petitioner was, he did nothing more than read the exhibit on the witness stand and then testify (incorrectly) that "it was signed by Stephen Nelson."

not directly apply. *See United States v. Falkner*, 493 F.3d 1221, 1227 (10th Cir. 2006) (rejecting a Confrontation Clause challenge against non-hearsay verbal acts evidence). However, reliance on testimonial hearsay as part of an evidentiary foundation can trigger the confrontation right. *See, e.g., United States v. Sweeney,* 70 M.J. 296, 305 (C.A.A.F. 2011). To determine the correct standard of review, we must decide whether the necessary foundation for PE 2 required testimonial hearsay.[7]

Officer ▋ was not competent to authenticate PE 2. The only identifiable person who had sufficient knowledge of PE 2's authenticity was Mr. ▋, who purported to attribute both the statements and the signature to appellant. He did not testify, so we look to whether the government's failure to call him to authenticate PE 2 violated the Confrontation Clause.

To determine whether evidence is testimonial hearsay, we look at the "totality of the circumstances," including "whether (1) the statement was elicited or made in response to law enforcement or prosecutorial inquiry, (2) the statement involved more than a routine and objective cataloging of unambiguous factual matters, and (3) the primary purpose for making, or eliciting the statement was the production of evidence with an eye toward trial." *United States v. Squire,* 72 M.J. 285, 288 (C.A.A.F. 2013) (citations omitted). First, neither appellant's statements to Mr. ▋ nor Mr. ▋ entries on PE 2 were made in response to law enforcement or prosecutorial inquiry—law enforcement was an intended *recipient* of the statements, but law enforcement did not prompt them. Second, though created for submission to a court, the primary purpose of the petition was to initiate a non-adversarial civil process, not a criminal prosecution.[8] Concededly, the record is underdeveloped as to whether Mr. ▋ involvement was "more than a routine and objective cataloging of unambiguous factual matters." But despite this ambiguity and in view of the other two factors, we conclude that Mr. ▋ assertions on PE 2 are not testimonial, nor did PE 2 otherwise require testimonial hearsay for its admission.

Thus, we test for prejudice as non-constitutional error, considering "(1) the strength of the government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Kohlbek,* 78 M.J. at 334 (citation omitted). And here, we need only look

---

[7] Whether a statement is inadmissible testimonial hearsay under *Crawford v. Washington* is a question of law we review de novo. *United States v. Squire,* 72 M.J. 285, 288 (C.A.A.F. 2013) (citation omitted).

[8] The military judge relied on lay witness testimony in her findings of fact related to the primary purpose analysis. In our *de novo* review, we find it more suitable to take judicial notice of Michigan Compiled Laws § 330.1434 *et seq.*, the statutory framework that establishes the purpose for and procedures by which petitions of this nature are created, filed, and executed.

at the first two, because the strength of the evidence became irrefutable after the appellant testified.

On direct examination, appellant acknowledged that he was aware of the contents of PE 2 and that he personally submitted it to the police department. By submitting the document to the police, including the attestation that it was submitted under penalty of perjury, and providing sworn testimony on direct examination that he "believed it to be true," the appellant ratified and adopted every statement attributed to him therein. Mil. R. Evid. 801(d)(2)(B).[9] This established without question that PE 2 was what the government had always asserted it to be—the document memorializing appellant's statements, which became the instrumentality of the offense. And, on cross-examination, when the trial counsel asked, "[Y]ou saw this form and knew that it would be dropped off with the police but still chose to *submit* it to the police," appellant responded, "*Absolutely*" (emphasis added).[10] By that point, the strength of the evidence was overwhelming that appellant not only adopted the statements in PE 2, but he did in fact "submit" them as alleged. And his

---

[9] A statement is excluded from hearsay and admissible as "an opposing party's statement" if "offered against an opposing party and . . . is one the party manifested that it adopted or believed to be true."

[10] Appellant argues that his guilty finding is ambiguous because it is not clear whether "submit," as used in the specification, refers to appellant initially uttering the statements orally at Network 180, the submission of the petition on his behalf to the probate court, or his later act of personally delivering the written document to the police. Appellant cites to our previous panel decision in *United States v. Williams-Clark,* in which we set aside a conviction as fatally ambiguous. 2026 CCA LEXIS 145 (Army Ct. Crim. App. 25 Mar. 2026) (Mem. op.). First, we do not see the record as ambiguous; appellant was not charged with "making" the statements but rather "submit[ting]" them, and the trial counsel's cross examination and closing argument made clear that the government's theory of liability was the act of submitting the document to the police station, which led to the involuntary detention of appellant's wife. Second, *Williams-Clark* is distinguishable because in that case we found ambiguity arising from the parallel acquittal for a specification that encompassed the same conduct for which the appellant had also been convicted. *See* 2026 CCA LEXIS 145 at * 12. Without a parallel acquittal, to the extent there is any ambiguity, this case would be controlled by the general verdict rule, under which we may affirm the conviction for an offense that could have been committed by multiple means "as long as the evidence supports at least one of the means beyond a reasonable doubt." *United States v. Brown,* 65 M.J. 356, 360 (C.A.A.F. 2007) (citation omitted); *accord, United States v. Nicola,* 78 M.J. 223, 226 (C.A.A.F. 2019) ("We can affirm the finding of guilt if either theory is legally sufficient."). And appellant's own testimony clearly establishes that he deliberately "submitted" PE 2, fully aware of its contents, to the police.

testimony rendered any error harmless in the military judge's earlier admission of PE 2.[11]

## CONCLUSION

The findings and sentence are AFFIRMED.[12]

Senior Judge MORRIS and Judge JUETTEN concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[11] Before this court, appellant argues that his testimony during the defense case in chief "was only necessitated by the erroneous prior admission" of PE 2. The record does not support this contention. Appellant exercised his right to testify in his own defense, not just about this exhibit and this offense, but every offense charged. He did not testify only for the limited purpose of the evidentiary foundation to PE 2, nor did he limit his trial testimony to only certain offenses, either of which would have been permitted under Mil. R. Evid. 301(c). He chose to testify without limitation or qualification, and the trier of fact was free to believe or disbelieve his testimony on every element of every offense to the same degree as any other witness. *Nicola,* 78 M.J. at 227.

[12] Block 29 of the Statement of Trial Results, as incorporated into the Judgement of the Court, was incorrectly marked "No" and should reflect a response of "Yes." In accordance with *United States v. Williams, 85* M.J. 121 (C.A.A.F. 2024), we lack the authority to modify Block 29. We do, however, note the discrepancy for the record.